ADA MALONE v. R. C. HOWELL.

192 So. 224
Special Division B
Opinion Filed November 17, 1939
Rehearing Denied December 7, 1939

694

*Singletary & Cornwall* and *C. A. Savage,* for Plaintiff in Error;

*J. V. Walton,* for Defendant in Error.

BUFORD, J.—Writ of error brings for review judgment in favor of defendant in a suit in which the plaintiff sought to recover damages for the wrongful death of her husband.

Count four amending the third amended declaration is as follows:

"Fourth: Ada Malone, the plaintiff, by her attorneys, C. A. Savage, Jr., and John B. Singletary, sues the defendant, R. C. Howell, a resident of the County of Putnam of the State of Florida, for that on and prior to the 24th day of December, 1931, the defendant, R. C. Howell, was the Sheriff of the said County of Putnam and that as such Sheriff sometime prior to the said 24th day of December, A. D. 1931, in the county aforesaid did appoint W. G. Watkins, Lee Jernigan, G. W. Prater and E. H. McGaha each a deputy to act under him in and for said county with full power and authority usually conferred on deputies, and that such appointment was accepted by the said above named deputies and was in full force and effect and unrevoked on the said 24th day of December, A. D. 1931, at the time of the negligence hereinafter alleged; that the said W. G. Watkins, Lee Jernigan, C. W. Prater and E. M. McGaha on the 24th day of December, A. D. 1931, acting as deputies in and for said county under and by virtue of said appointment and in the exercise of the power and authority vested in them as deputies and in regular performance of their respective duties as such deputies, did on the 24th day of December, A. D. 1931, near the Town of Kinwood in said county and State, and at a place known as Lake Hewitt's Scrub lawfully undertake to arrest one John

Malone, that at said time and place the said W. G. Watkins, Lee Jernigan, G. W. Prater and E. H. McGaha were each armed with a deadly weapon, to-wit: a firearm, commonly known as a gun or pistol, and the said W. G. Watkins, Lee Jernigan, G. W. Prater and E. H. McGaha, did then and there while undertaking to arrest the said John Malone as aforesaid, negligently and carelessly fire off and discharge said firearms, guns, or pistols and in the direction of the said John Malone, he the said John Malone, being at the time of such negligence and carelessness in range of said firearms, guns or pistols, and the said W. G. Watkins, Lee Jernigan, G. W. Prater and E. H. McGaha so negligently and carelessly discharged said firearms at and in the direction of the said John Malone, that he, the said John Malone, was struck by one or more of the shots or bullets discharged from said firearms, inflicting a wound in and upon the body of the said John Malone, as a result of which said wound, he, the said John Malone, then and there died.

"That at the time of the death of the said John Malone, as aforesaid, he was of the age of thirty-two (32) years, and was the lawful husband of the plaintiff.

"That because of the death of the said John Malone, as aforesaid, plaintiff was and is damaged to the extent of the pecuniary value of the life of the deceased to her, as her husband; and also suffered the loss of the comfort, protection and society of her husband, of the value of $49,700.00 and was also damaged to the extent of the reasonable funeral expenses incurred by the plaintiff in burying her deceased husband in the total amount of $300.00.

"WHEREFORE, the plaintiff brings this suit and claims $50,000.00 damages."

We quote this count of the declaration because the allega-

tions made in this count make the case upon which the plaintiff was required to recover, if at all.

Admitting that every allegation of such count was true, except the allegation that the named deputies "did on the 24th day of December, A. D. 1931, near the Town of Kinwood in said county and State, and at a place known as Lake Hewitt's Scrub lawfully undertake to arrest one John Malone," a case showing liability of the sheriff would not be presented. That (the last above quoted) allegation was contained in each and every count of the several declarations filed and in the amendment sought to be filed, the filing of which was denied by the court.

This was a necessary and basically material allegation and, without proof to support it, the plaintiff could not recover against the sheriff. See Swanson v. Cahoon, 111 Fla. 788, 152 Sou. 203.

Plaintiff in error has presented several questions for our consideration, but as the disposition of the case rests first upon the answer to the question as to whether or not the deputies referred to did lawfully undertake to arrest one John Malone at the time and place alleged in the declaration. Other questions need not be discussed. The record shows that the alleged deputies had located a liquor still which was evidently being used for the purpose of manufacturing moonshine whisky. It shows that one Walker was suspected of being the owner and operator of the still. The still was located some four miles from any residence and was located in a small clearing situated in an oak scrub. There were trails leading to it. The still was set up and there were some barrels close by containing what is known as mash. Three deputies with another, one McGaha, who may or may not have been a deputy so far as consideration of this matter is concerned, went in the night time to the

location of the still and concealed themselves in the bushes near by. Sometime during the following day when these parties remained concealed in the near-by bushes, one John Malone and a negro, probably Charlie Jackson, approached the still on one of the trails leading thereto. Malone was in front and as he stepped into the clearing· one of the deputies called to him. He immediately turned and attempted to flee when he was shot by one or more of those lying in wait and was killed. The deputies had no warrant for the arrest of Malone. He had committed no crime, either felony or misdemeanor, in the presence of the officers who attempted to accomplish his arrest of which they, or either of them, had any evidence at that time. It is true that it developed later that Malone intended to examine the mash but so far as what the deputies saw or heard is concerned he had done nothing in their presence which constituted an unlawful act or the evidence of which would have been sufficient to convict him of any unlawful act. If they had arrested Malone and he had said nothing incriminating himself, there was no fact established by his conduct which would show him to be connected with the still, to have any interest in it or to have done any unlawful act. McGaha testified that he thought the still belonged to a man by the name of Walker and that when Malone was shot he called him by the name of Walker and Malone told him that he was not Walker.

It is not unlawful for a person to approach a contraband liquor still and, for all those who were lying in wait knew or could ascertain from the actions and conduct of Malone in their presence, he was as innocent of having anything to do with the operation of the distilling apparatus as they themselves were.

So it is that there was a total lack of proof of any overt

act upon the part of Malone which would authorize his arrest without warrant upon the theory that he had committed a crime in the presence of the officers.

An arrest without a warrant for a misdemeanor, to be lawful, can only be made where the offense was committed in the presence of the officer—that is, it must have been within the presence or view of the officer in such a manner as to be actually detected by the officer by the use of one of his senses. See Brown v. Wallis, 100 Tex. 546, 101 S. W. 1070, wherein the Court said: "It is not sufficient that the officer is within seeing or hearing distance of the criminal act and thereby obtains knowledge of the fact, but he must also be able to 'detect it by sight or hearing as the act of the accused'." See also People v. Johnson, 86 Mich. 175, 48 N. W. 870; 24 Am. St. Rep. 116, 13 L. R. A. 163; Baldwin v. State, 175 Miss. 316, 167 South. Rep. 61; Kennington Saenger, Inc., v. Wicks, 168 Miss. 566, 151 South. Rep. 549.

It is the general rule that sheriffs and other officers performing similar duties are civilly liable but not criminally for the acts and omissions of their deputies when performed within the scope of their legal authority and by virtue of their office. See Swenson v. Cahoon, *supra;* also annotation in 1 A. L. R., page 236, subdivision LX. But it is undoubtedly true that when a sheriff appoints deputies he confers on them authority to make arrests only when the law authorizes arrests to be made. This is the extent of his authority and he cannot confer more than this. Brown v. Wallis, 100 Tex. 546, 101 S. W. 1068.

It is also true that an agreement by a group of officers to make an arrest that is unauthorized will make all parties to the agreement liable civilly to the one injured in the accomplishment of the arrest as they are joint tort feasors.

Mitchell v. Hughes, 104 Wash. 231, 176 Pac. 26. But it does not follow that the sheriff is liable for these acts of his deputies unless such officers were acting within their authority under the law authorizing such an arrest. See Brown v. Wallis, *supra.*

In the instant case, to hold the sheriff liable even though the actor had been one of his own deputies, would be unwarranted, unless there was lawful authority on their part to make the arrest. Brown v. Wallis, *supra;* Hogg v. Lorenz, 234 Ky. 751, 29 S. W. (2d) 17; Wise v. Curl, 177 Ala. 324, 58 South. Rep. 286.

It has been held that the sheriff was not liable for a wrongful arrest by his deputy without a warrant for an offense not committed in his presence (Jones v. Van Bever, 164 Ky. 80, 174 S. W. 795), or an injury inflicted by the deputy while making such an arrest (Brown v. Wallis, 100 Tex. 546, 101 S. W. 1070) ; or the killing of a person by the deputy holding a warrant for arrest, but before announcing that he held a warrant (Tate v. Baugh, 264 Fed. 892 [Tenn.]) ; also where a special deputy, without the knowledge or direction of the sheriff, voluntarily procured a "John Doe" warrant and, in attempting to make an arrest, shot a bystander, the sheriff was not liable (Hanie v. Rice, 194 N. C. 236, 139 S. E. 380.

The principle under which the sheriff is held accountable for the acts of his deputies while acting officially or under color of office is that it is the sheriff acting through the said deputy. He is deemed to have full knowledge and to give his consent to the acts of his deputies committed in the discharge of duty. Michel v. Smith, 188 Cal. 199, 205 Pac. 113. The acts of a *"de facto"* deputy, that is, one that has been held out to be a deputy and has so acted in the past, are in a like manner considered the acts of the sheriff and

he is liable therefor under circumstances which would make the sheriff liable for the acts of a dejure deputy. 95 Ala. 156, 36 Am. St. Rep. 187, 10 South. Rep. 341; and annotations in 1 A. L. R., page 245; but a person not under the direction and control of the sheriff cannot be said to act for the sheriff and his acts cannot be imputed to the sheriff.

There must be recognized a difference between the meaning of the phrase "under color of office" and the phrase "by virtue of office." Acting under color of office is defined as:

"A pretense of official right to do an act made by one who has no such right. 9 East 346. It implies an illegal claim of authority to do an act by virtue of one's office (23 Wend. [N. Y.] 606; 1 N. Y. 365; 16 N. Y. 439, 442), and is distinguished from 'by virtue of office' implying lawful power. (4 N. Y. 173.)" Black's Law Dictionary.

" 'Color of office' is an appointment or election of some kind. Buck v. Hawley & Hoops, 105 N. W. 688, 129 Iowa 406." Words & Phrases (2), Vol. 1, page 763.

"Where the act of an officer is in the line of his duty it is what is termed in the books 'color officii.' Board of Commissioners of Ramsey County v. Sullivan, 93 N. W. 1056, 89 Minn. 68." Words & Phrases (2), Vol. 1, page 763.

"An appearance or semblance of a right, authority, office or the like." Webster's New International Dictionary.

"A claim or assumption of right to do an act by virtue of an office, made by a person who is legally destitute of any such right." Black's Law Dictionary.

"An act unjustly done by the countenance of an office, being grounded upon corruption, to which the office is as a shadow and color. Plow. 64." Black's Law Dictionary.

"The phrase 'Color of Office' implies, we think, some official power vested in the actor,—he must be at least officer

*'de facto.'* We do not understand that an act of a mere pretender to an office, or false personator of an office, is said to be done by color of office. And it implies an illegal claim of authority, by virtue of the office, to do the act or thing in question. 23 Wend. 606 (N. Y.)." Black's Law Dictionary.

The acts for which a sheriff or his sureties may be held liable are termed acts done *"virtue officii,"* and those for which they cannot be held liable are termed *"colore officii."* The distinction is that acts are done *"virtue officii"* when they are within the authority of the officer, but done in an improper exercise of his authority or in abuse of the law, while acts are done *"colore officii"* where they are of such nature the office gives him no authority to do them. Gold v. Campbell, 117 S. W. 463, 54 Tex. Civ. App. 369.

Acts done *"virtute officii"* are within the authority of an officer, but which are accomplished by the improper exercise of that authority and in violation of the confidence which the law reposes in him, and his sureties are liable for such acts; thereas acts *"colore officii"* are unauthorized by the office and do not amount to a breach of the bond. Stephens v. Hendee, 115 N. W. 283, 80 Neb. 754. See also Citizens Bank of Colquitt v. American Surety Co. of New York, 164 S. E. 817, 174 Ga. 852; Shelton v. National Surety Co. of N. Y., 32 S. W. (2d) 339, 235 Ky. 778.

It therefore follows that as the complainant could not recover against the sheriff in this case, for the reasons hereinbefore stated, no harmful error resulted by reason of verdict and judgment in favor of the defendant, and the same is affirmed.

So ordered.

WHITFIELD and CHAPMAN, J. J., concur.

THOMAS, J., concurs in opinion and judgment.

Justices BROWN and TERRELL not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.