**SPESSARD L. HOLLAND, as Governor of the State of Florida, for the use and benefit of DORIS J. WILLIAMS, v. HOWARD L. MAYES, as Sheriff of Escambia County, Florida, and UNITED STATES FIDELITY AND GUARANTY COMPANY OF BALTIMORE, MARYLAND, a Corporation.**

19 So. (2nd) 709  
November 7, 1944  
Rehearing denied November 24, 1944

June Term, 1944  
Division A

F. *Churchill Mellen,* for appellant.
*Fisher & Fisher,* for appellees.

TERRELL, J.:

In May, 1941, Howard Mayes as Sheriff of Escambia County, and two of his deputies, Red Salmons and Guy Harvey and Mallory Williams, a constable, went to a restaurant on the outskirts of Pensacola operated by Chris Merinkers to apprehend William McCray who was charged with stealing cigarettes. The party traveled in the sheriff's car and parked it between the restaurant and the fence which ran about twenty-five feet to the north. McCray appeared at the fence north of the car about two o'clock in the morning and Merinkers went to negotiate with him for the stolen cigarettes. The officers were all parked around the car. At the approach of McCray to the fence, Mallory Williams proceeded east to a gate where the car had entered the lot enclosing the restaurant, followed by Red Salmons. The sheriff proceeded to the fence where McCray had appeared, shouted "Halt" and fired at him. McCray fled in a northerly direction; Mallory Williams by this time had passed through the gate, turned to the left, and entered the field through which McCray was fleeing and followed him calling "Halt" and firing at him. He called "Halt" a second time and fired at McCray again. Immediately after Williams' second shot, Red Salmons who had followed him through the gate and saw a man running, fired in that direction. Williams was found mortally wounded and McCray was later found shot through the leg. Red Salmons admitted that he killed Mallory Williams but testified that when he shot he thought he was shooting

at McCray. It was shown that McCray and Williams were dressed alike and were about the same size.

This action was brought by the Governor of Florida on behalf of Doris J. Williams, the widow of Mallory Williams, against Howard Mayes as Sheriff of Escambia County, and United States Fidelity and Guaranty Company of Baltimore as surety on his bond for the wrongful death of Mallory Williams. The case went to trial on the issue made by the pleas to the declaration and at the conclusion of the testimony, the court directed a verdict for the defendants. This appeal is from the judgment entered on that verdict.

The parties are not agreed as to what questions this Court should answer but the ultimate result of their differences is not material. The real question presented is whether or not under the law of Florida, the sheriff and his official bondman may be held liable in damages for the negligent acts of the sheriff or his deputies when in the discharge of their official duty.

It was admitted at the threshold of the trial that a warrant had been issued for the arrest of McCray, that the sheriff's party was attempting to arrest McCray when Williams was killed and that consequently everything which took place in connection with the killing of Mallory Williams was done by virtue of the office of the participants.

Section 30.07, Florida Statutes of 1941, authorizes the sheriff to appoint deputies, clothes them with the same power as the sheriff and makes the sheriff responsible for their negligent acts. Section 30.01, same statutes, requires the sheriff to post a bond payable to the Governor, the amount of which is determined by the Board of County Commissioners and conditioned on the faithful discharge of the duties of the office.

The law of Florida does not release a sheriff or his deputy from liability for wrongful acts merely because he is sheriff. It is generally held that the sheriff and his deputy are one and the same person and that the acts of the deputy may be imputed to the sheriff. There is accordingly no such relation as master and servant or principal and agent existing between

them. The sheriff acts through his deputy, is charged with knowledge of his acts and consents to all acts done officially or under color of his office.

Appellee contends that the killing of Mallory Williams cannot be held as anything more than justifiable or excusable homicide, that the sheriff and his bondman cannot be held in damages for his death therefor, that suit cannot be maintained on the sheriff's official bond for his wrongful death and if it could, recovery would be barred for contributory negligence or assumption of risk.

We do not think that the question of assumption of risk or contributory negligence enters into a case of this kind because that is a common law doctrine concerned with master and servant relation. In our view, the case turns on the question of whether or not a sheriff is held to the same degree of responsibility for the negligent killing of one in the discharge of his official duty, as other citizens in their relation to the public are held. We think this question should be answered in the affirmative so it becomes unnecessary to discuss further in this connection the distinction between justifiable and excusable homicide and whether or not the official bond of the sheriff is responsible.

The plaintiff relies for recovery on Malone v. Howell, 140 Fla. 693, 192 So. 224, and framed his declaration on the theory of the declaration in that case. In Malone v. Howell, we approved the rule that sheriffs and like officers are civilly but not criminally liable for the acts and omissions of their deputies if performed within the scope of their legal authority and by virtue of their office. We made no pronouncement as to the degree of negligence that would warrant recovery.

There are some material differences between Malone v. Howell and the case at bar. In the Malone case, there was no warrant for the person that was killed and no charge had been made against him. He was shot in daylight and was not a member of the sheriff's posse that did the killing. He was nothing more than an innocent bystander and for that reason, coupled with the fact that there was no warrant for him and he was charged with no crime, the attempted arrest was illegal. These were also the inducements for denying

recovery against the sheriff in that case. We did approve the declaration in the Malone case and that with the principal of law announced in the preceding paragraph of this opinion is about all there is in it that is material to the case at bar.

When we commenced the study of law, we were early confronted with the maxim; For every wrong there is a remedy. Section Four of our Declaration of Rights, in providing that the courts shall be open at all times to speedily avenge wrongs to person or property, was designed to give life and vitality to this maxim. We are not unmindful that contributory negligence assumption of risk, and perhaps other common law doctrines have subtracted from remedies that were designed to impair wrongs; at the same time many of these have been abandoned and the tendency of the law at the present is to modify or abandon them in the interest of the person injured. In some fields, noteworthy that of Workmen's Compensation, the Legislature has declared it to be the policy that the public should help bear the burden of wrongs or injuries to the individual which occur in line of duty.

In the death of Mallory Williams, his widow and seven minor children were suddenly bereft of the love, support, and protection of a husband and father while he was attempting to protect the public from the depredations of a thief. In determining whether Mallory Williams' death was justifiable or excusable homicide under the circumstances we should be governed by present day patterns and concepts rather than by those applied at the time some of the cases cited and relied on were decided. It is as much the duty of courts as it is legislatures to keep legal concepts fluid and if they have to set aside long established precedents to do this, they should not hesitate to do so.

When the play of this unfortunate drama commenced, Williams was stationed at one of the rear fenders of the sheriff's car and Red Salmons was stationed at the other, not exceeding four feet apart. They both proceeded easterly to the gate where the car entered the enclosure, Williams evidently being in the lead. When they passed through the gate, Williams made a left turn and fired the two shots at McCray

already referred to. Salmons was found to have passed through the gate close behind Williams. He also made a left turn and seeing a man fleeing in the dark twenty-five or thirty feet away whom he took to be McCray fired in that direction and killed Williams.

We think the very circumstances of the case refute the theory that Williams' death was an excusable homicide. When four men of the same party are out in the night for the purpose of apprehending one charged with stealing and all of them are in a radius of twenty-five or thirty feet of each other and the alleged thief is discovered within or near the same radius, it constitutes gross negligence for one of the party to deliberately throw up his gun and fire in the direction of a man fleeing in the dark, being at the time without knowledge of the location of his companions. We think under such circumstances each member of the posse is charged with knowledge of the location of his companions. Night thief hunting by arresting officers requires a much higher degree of care for the safety of others than hunting one in daylight. Hunting with a posse accentuates the degree of care and under no circumstances is an officer warranted in shooting in the dark where other members of the posse may be. Care of the sheriff and his deputies to preserve the safety of those engaged with him on a thief hunt must always rise above zeal to shoot the thief. A posse on a mission like this should be carefully organized and specifically directed with the view of avoiding danger to each other. A plea of excusable homicide is never permissible when the record shows that this and other academic precautions were not taken.

It follows that in directing a verdict for the defendants, the court below applied the wrong rule of law to the facts in this case. We think the sheriff and his deputies are bound by the same rule of negligence that a civilian is bound by under like circumstances and that his official bondman may be required to respond in damages therefor.

Reversed.

BUFORD, C. J., CHAPMAN and ADAMS, JJ., concur.