127 So.2d 914 (1961)
CITY OF CORAL GABLES, Florida, a municipal corporation, Appellant,
v.
Virginia GIBLIN, Appellee.
No. 59-643.
District Court of Appeal of Florida. Third District.
March 13, 1961.
*915 Edward L. Semple and William M. Burton, Jr., Miami, for appellant.
Nichols, Gaither, Green, Frates & Beckham and Sam Daniels, Miami, for appellee.
HORTON, Chief Judge.
The appellee, plaintiff below, instituted an action against the appellant City of Coral Gables, and Anderson, a police officer, for false imprisonment. The complaint alleged that Anderson, an employee of the City of Coral Gables, a municipal corporation, did, while acting within the scope and course of his employment, stop the appellee, who was proceeding in an automobile with her husband to the Dade County Courthouse, and thereupon proceeded to prepare a citation showing that the appellee had exceeded the lawful speed limits of the City of Coral Gables; that Anderson wrongfully and unlawfully delayed the preparation of the citation for an unreasonable length of time, depriving the appellee of her freedom and right to proceed and that thereafter, due to such delay, the appellee's husband drove her from the scene at a lawful rate of speed to a point approximately two and one-half miles away within the corporate limits of the City of Miami, where Anderson accosted them on his motorcycle and, by sounding his siren and reaching for his pistol, required the appellee's husband to stop their automobile; that upon stopping the automobile, Anderson, without cause or authority to do so, unlawfully, wrongfully and maliciously deprived appellee of her freedom and compelled the appellee to be driven to the municipal jail of the City of Coral Gables and did unlawfully, wrongfully and maliciously imprison her and deprive her of her freedom. There followed the charge that the appellee suffered loss of liberty, mental suffering, physical injury, humiliation and embarrassment as a result of the alleged wrongful acts. One paragraph of the complaint charged the appellant with negligent employment of Anderson as a police officer and his retention with knowledge of his incompetency. An answer was filed on behalf of the appellant which adopted the allegations of the answer filed on behalf of Anderson but denied the charge of negligent employment and retention of Anderson in the service of the city with knowledge of his incompetency.
Upon the issues made, the cause was tried before a jury and at the conclusion of the appellee's case, both the appellee and appellant moved for directed verdicts. At this time the appellee withdrew the charge against the appellant city that it was negligent in employing Anderson and retaining him in its employ. The trial judge denied the appellant's motion for directed verdict but granted the appellee's motion on the ground that appellee's arrest by Anderson in the City of Miami was illegal. The cause went to the jury on the sole issue of damages, both compensatory and punitive, resulting in a verdict for the appellee in the sum of $34,000 against appellant and Anderson. Anderson has not appealed the judgment.
The testimony and evidence at trial developed that on the morning of January 23, 1959, the appellee, accompanied by her husband, was proceeding east from their home along Blue Road in Coral Gables, Florida, when their automobile, driven by the appellee, was stopped by Anderson, a police officer of the appellant city. The appellee's automobile was stopped within the municipal limits of the City of Coral Gables as a result of a radar check being made by police officers of the City of Coral Gables. The automobile operated by appellee was clocked at 36 miles per hour at a point on Blue Road where the lawful posted rate of speed was 25 miles per hour. Upon stopping the appellee's car, Anderson took her driver's license, walked to the back of the automobile to obtain appellee's automobile license number, went to the right side of the appellee's car and obtained the inspection sticker number, and at that time, was allegedly apprised of the fact that appellee's husband, then one of the judges of the Circuit Court of the Eleventh Judicial *916 Circuit of Dade County, Florida, had to be in court at 9:00 a.m. Other conversation ensued but resulted in the officer's walking to the rear of the automobile to speak to another officer some 30 feet away. While Anderson was conferring with the other police officer, appellee's husband took over the wheel of the automobile, called to Anderson, telling him that they were leaving and proceeded to drive away. At this point the testimony is in conflict as to whether or not Anderson, upon becoming aware that appellee's automobile was about to leave, informed appellee, her husband, or both, that they were under arrest and should not leave. The appellee testified that Anderson's admonition was directed to her husband, while Anderson's testimony indicates that his command was addressed to the appellee. After they had driven approximately two and one-half miles from the point at which they were stopped on Blue Road in the City of Coral Gables, a motorcycle driven by Anderson was observed by appellee at the intersection of Bird Avenue and U.S. Highway No. 1. As the appellee's husband turned their automobile east on Bird Avenue at U.S. Highway No. 1, they were overtaken and ordered to stop by Anderson who had the motorcycle's siren and red light on. The appellee's husband at first refused to stop and did so only when Anderson "went for his gun." Thereupon, appellee's automobile was brought to a halt in the 3100 block of Bird Avenue in the City of Miami. After appellee's automobile had stopped, Anderson opened the door, took the ignition keys and went to a private home and telephoned for help. As a result, two police patrol cars of the appellant city arrived on the scene, appellee's husband was personally searched by the police officers, and she and her husband were placed in a patrol car and driven to the Coral Gables police station. The appellee's car was taken to the police station by police officers assisting Anderson. After arrival at the Coral Gables police station, appellee and her husband were placed in a booking room which contained a desk, swivel chair, bench and extension telephone. The appellee testified that the door was locked, whereas the appellant's witnesses testified that it was not. After one fruitless attempt to use the telephone, appellee was allowed to make a telephone call. The appellee and her husband remained in the booking room fifteen or twenty minutes and thereafter appellee accepted a traffic summons, signed it, pleading guilty to the charge of speeding, paid the fine and was released.
Four points have been posed and argued by the appellant under its assignments of error seeking reversal of the judgment. However, we deem it necessary to discuss only one aspect of the case, i.e., whether the trial judge erred in directing a verdict against the appellant city. At this point it should be observed that the trial judge, in directing a verdict of liability against the appellant city and its police officer Anderson, did so upon the specific finding that the appellant's employee Anderson had illegally arrested the appellee in the City of Miami.
The appellant argues that under the circumstances the arrest in the City of Miami was lawful and did not render the appellant liable for false arrest or false imprisonment. This point is urged upon the theory that when the appellant's employee Anderson stopped the appellee in the City of Coral Gables for the violation of a municipal ordinance, she was then under arrest; that the subsequent attempt by the appellee to flee the custody of the arresting officer permitted the arresting officer, without warrant, to retake the appellee into custody by immediate pursuit pursuant to § 901.22, Fla. Stat., F.S.A. Section 901.22, supra, provides:
"If a person lawfully arrested escapes or is rescued, the person from whose custody he escapes or was rescued or any other officer may immediately pursue and retake him without a warrant at any time and in any place within the state."
*917 Certainly if the arrest were lawful at its inception in the City of Coral Gables, it could be strenuously urged, due to the broad provisions of this statute, that the subsequent rescue or re-arrest in Miami was legal. See opinion of Attorney General of Florida, No. 60-9, 1960. However, if there were no arrest in Coral Gables, as the appellee contends, then, of course, the provisions of § 901.22, supra, would not apply and in such event, the arrest in Miami would have been without legal authority. The appellant further contends that the arrest was lawful under § 901.15, Fla. Stat., F.S.A. This statute permits a peace officer to arrest a person when "* * * a violation of a municipal ordinance" has been committed "in his presence. In the case of such arrest for a * * * violation of a municipal ordinance, the arrest shall be made immediately or on fresh pursuit." [Emphasis supplied.] This contention would merit further examination and discussion were it not for the obvious lack of authority of a municipal police officer to pursue and initially arrest an offender beyond the boundaries of the municipality. No authority has been cited us, and our research fails to disclose any statute, special or general, that authorizes a municipal police officer to pursue and initially arrest an offender beyond his municipal territorial limits. See opinion of Attorney General of Florida, No. 55-24, 1955; Rodgers v. Schroeder, 220 Mo. App. 575, 287 S.W. 861, 863-64.
If the initial arrest was legal, there would appear to be no liability for a re-arrest. On the other hand, if there was no lawful arrest initially, then the city could not claim a lawful re-arrest pursuant to § 901.22, supra, and such alleged re-arrest would be ultra vires. Therefore, the legality or illegality of the arrest in the City of Coral Gables becomes, as between the appellee and the city, an immaterial issue.
Admittedly the appellee had committed no act which constituted a felony or misdemeanor under the law and obviously appellant's police office, absent a warrant, was without authority to arrest appellee for the violation of a municipal ordinance of the City of Coral Gables within the corporate limits of the City of Miami. It is generally conceded that the ordinances of a municipality are enforceable only within the territorial limits of the municipality as defined by its charter or the legislative act constituting the city. Neither City of Coral Gables, its city commission, nor any official thereof, had the authority, either real or apparent, to confer upon one of its police officers the power and authority to arrest a citizen without a warrant outside the territorial limits of the city for a violation of that municipality's traffic regulations. If the City of Coral Gables, as it must be conceded, had no jurisdiction to enforce its ordinances and such ordinances had no effect outside of its prescribed territorial limits, then it follows that no authority could have been conferred upon the appellant's police officer to have made the arrest which it is charged that he made. One cannot delegate an authority which he does not possess. See Brown v. Town of Eustis, 92 Fla. 931, 110 So. 873.
Both parties to this appeal, in varying degrees, urge the applicability of the decision of the Supreme Court of Florida in Hargrove v. Town of Cocoa Beach, Fla. 1957, 96 So.2d 130, 133, 60 A.L.R.2d 1193, but disagree as to the scope of such decision. In that case, the court, in considering the liability of a municipality for the negligent act of one of its employees in permitting a prisoner who was intoxicated to suffocate, receded from a long line of decisions immunizing municipal corporations from tort liability on the broad theory of sovereign immunity. The court held that a municipality could be held liable under the doctrine of respondeat superior for the negligent acts of its employees while acting within the scope of their employment. Specifically, Justice Thornal, speaking for the court, said:
"* * * We here merely hold that when an individual suffers a direct personal *918 injury proximately caused by the negligence of a municipal employee while acting within the scope of his employment the injured individual is entitled to redress for the wrong done." [Emphasis supplied.]
The appellant contends that the Hargrove decision covers negligent acts and not intentional torts such as false imprisonment or false arrest, and that it was never intended by that decision to fix liability upon municipal corporations for the actions of their officers, servants or employees that were intentional in character or performed without any legal authority. On the other hand, the appellee just as strenuously argues that the language of the Hargrove decision leads to the inescapable conclusion that the import of that decision was to wipe away the archaic theory of sovereign immunity and thereby render municipalities liable for all acts, both negligent and intentional, committed by employees of a municipal corporation. Certainly some of the language of that decision supports the appellee's view.
In analyzing and considering the positions urged by the parties to this appeal, we feel it necessary to examine the historical origin and basis for the Hargrove decision. One of the leading cases which we consider to have had a salient effect on and which contributed materially to the decision announced in the Hargrove case was City of Miami v. Bethel, Fla. 1953, 65 So.2d 34. The Bethel case involved an arrest by officers of the City of Miami who, after arresting Bethel, proceeded to beat him, resulting in serious permanent injuries. The majority of the Supreme Court in that case reversed a judgment in favor of Bethel and continued to adhere to the principles of sovereign immunity. However, the dissenting opinion of Mr. Justice Terrell (concurred in by Mr. Justice Roberts) appears from the Hargrove decision to have been one of the main bases for the holding in the latter case. Justice Terrell's dissent in the Bethel case recognized, however, that there should be some limitation upon the type of acts of municipal employees that would render the municipality liable, when on page 39 of the Bethel decision he said:
"In so holding I do not overlook those cases which hold that a city cannot be held liable for ultra vires acts or for torts committed pursuant to an unlawful or negligent act, such as was involved in Brown v. City of Eustis, 92 Fla. 931, 110 So. 873, and that line of cases. * * * We are confronted with a case in which the policeman lawfully took one in custody, but every act ensuing the arrest was performed in an unlawful, unauthorized manner." [Emphasis supplied.]
Brown v. Town of Eustis, supra, referred to in Justice Terrell's dissenting opinion in the Bethel case, involved a policeman who was patrolling the streets, and who, without authority of law and without being requested or called upon, entered into a place of business, arrested the plaintiff who was a guest of the owner of the building and maliciously and without provocation struck the plaintiff and inflicted personal injuries upon him. In affirming a judgment sustaining a demurrer to the plaintiff's declaration containing essentially the above facts, the court said:
"It is settled law in this state that a municipal corporation is not liable for the tortious acts committed by its officers as such, unless the acts complained of were committed in the exercise of some corporate power, or in the performance of some duty imposed upon the municipality by law, and that it is not liable for the unlawful or prohibited acts of its officers or agents. City of Orlando v. Pragg, 31 Fla. 111, 12 So. 368, 19 L.R.A. 196, 34 Am.St. Rep. 17."
It is interesting to note that the Hargrove decision makes no direct reference to the Brown case, but does specifically refer to such cases as Elrod v. City of Daytona *919 Beach, 132 Fla. 24, 180 So. 378, 118 A.L.R. 1049, and Akin v. City of Miami, Fla. 1953, 65 So.2d 54, 37 A.L.R.2d 691. Consequently, we conclude that the effect of the Hargrove decision was not to overrule or modify the prior holdings of the Supreme Court of Florida in cases such as Brown v. Town of Eustis, supra; Avey v. City of West Palm Beach, 152 Fla. 717, 12 So.2d 881; and Town of Palm Beach v. Vlahos, 153 Fla. 781, 15 So.2d 839. Particularly interesting, and appropos of the view taken here, is the language of the Supreme Court of Florida in the Avey case, where in contrasting municipal liability for injuries resulting from a lawful act done in an unauthorized manner and those acts done which are unlawful or prohibited, said:
"A municipal corporation is not liable for tortious acts committed by its officers and agents, unless the acts complained of were committed in the exercise of some corporate power conferred upon it by law, or in the performance of some duty imposed upon it by law. Such a corporation may be liable in damages for injuries to others proximately resulting from the doing by its officers in an unauthorized manner of a lawful and authorized act, but not doing an unlawful or prohibited act. See City of Tampa v. Easton, 145 Fla. 188, 198 So. 753."
In the more recent case of Hewitt v. Venable, Fla.App. 1959, 109 So.2d 185, this court reiterated the rule established by the Hargrove decision. We recognized in the Hewitt case that liability of a municipality under the doctrine of respondeat superior was based upon the negligent act having been performed by the municipal employee while acting within the scope of his employment. If, as the appellee contends, vicarious liability is to be fixed upon a municipal corporation for the actions of its employee, then such liability, we feel, should stem from the negligent or unauthorized manner of the performance of a lawfully delegated duty, rather than from the commission of an unlawful, illegal or prohibited act. Certainly when the appellant's police officer was within the City of Coral Gables attempting to enforce the traffic regulations or police ordinances of that municipality, he was acting not only within the scope but the course of his employment. But when he ventured beyond the territorial limits of the municipality under the circumstances depicted by the record in this case, he possessed no more authority than an average citizen. His actions in this case amounted to no more or less than would any other ultra vires act attempted by an employee of a municipality. See 23 Fla.Jur., Municipal Corporations, §§ 190, 191, 211, and cases cited therein.
It is true, as appellee argues, that the city by its answer conceded that its police officer was acting within the scope and course of his employment, but such admission could not carry with it the implication that the city had authorized or ratified an unlawful or illegal act. There was no admission that appellant's officer had performed an illegal act, as alleged in the complaint, as a part of or in the course of his employment. The city is a creature of the legislature and has only those powers granted it by charter or legislative act. 23 Fla. Jur., Municipal Corporations, §§ 7, 71, and cases cited therein. Those powers did not include the right to authorize an illegal act.
Although the doctrine of respondeat superior does not appear to have been the basis for fixing liability upon a sheriff for the actions of his deputies, nevertheless sheriffs appear to have been held liable for the negligent acts of their deputy sheriffs committed in the performance of the deputies' lawful duties. Conversely, sheriffs have been exonerated from liability for acts of deputies that were beyond or in excess of their duties prescribed by law. See Swenson v. Cahoon, 111 Fla. 788, 152 So. 203; Malone v. Howell, 140 Fla. 693, 192 So. 224, 226-27; Holland v. Mayes, 155 Fla. 129, 19 So.2d 709; § 30.07, Fla. Stat., F.S.A.
*920 Of particular interest in this regard is the case of Malone v. Howell, supra. Malone's widow brought an action for the death of her husband resulting when deputies, appointed by Howell, undertook to arrest the deceased. The facts disclose that deputies of Sheriff Howell had located a liquor still and they suspected one Walker of being the owner of the still. During the night, the deputies concealed themselves in bushes around the still. The following day, while the deputies were concealed, the deceased Malone, followed by a Negro, approached the still. As Malone stepped into a clearing, one of the deputies called to him, whereupon Malone attempted to flee and was shot and killed. The deputies had no warrant for the arrest of Malone, nor had he committed either a felony or misdemeanor in their presence. In affirming a judgment in favor of the sheriff, the court said [140 Fla. 693, 192 So. 226]:
"It is the general rule that sheriffs and other officers performing similar duties are civilly liable but not criminally for the acts and omissions of their deputies when performed within the scope of their legal authority and by virtue of their office. See Swenson v. Cahoon, supra; also annotation in 1 A.L.R., page 236, subdivision LX. But it is undoubtedly true that when a sheriff appoints deputies he confers on them authority to make arrests only when the law authorizes arrests to be made. This is the extent of his authority and he cannot confer more than this. Brown v. Wallis, 100 Tex. 546, 101 S.W. 1070, 12 L.R.A., N.S., 1019." [Emphasis supplied.]
Similarly, the appellant, a municipal corporation, whose power and authority are circumscribed by charter or legislative act, could confer no more authority upon its police officers to make arrests than was authorized by law. The acts of appellant's police officer may have been committed "under color of office" but certainly not "by virtue of office."
The appellant has urged other points, including the contention that the verdict was excessive and improper because there was no differentiation in the verdict between compensatory and punitive damages. There is also injected into this contention the fact that punitive damages in a case of this type are not recoverable against a municipality because of the fact that malice on the part of a police officer in such circumstances could not be imputed to a municipality. In view of the conclusions reached, we deem it unnecessary to discuss these questions.
We conclude that the trial judge erred in directing a verdict against the appellant and, accordingly, the judgment as to this appellant is reversed and the cause remanded with directions to vacate the judgment as to appellant, grant appellant's motion for directed verdict and enter judgment thereon.
Reversed and remanded with directions.
CARROLL, CHAS., J., concurs.
PEARSON, J., dissents in part.
PEARSON, Judge (dissenting in part).
While I must dissent from a part of the reasoning employed and the conclusion reached by the majority in this case, I nevertheless agree that the directed verdict upon the issue of liability was error. For reasons I shall attempt to state briefly, I would reverse the judgment and remand for a trial on the issues of liability and damages.
When the trial judge granted plaintiff's motion for a directed verdict upon the issue of liability at the conclusion of the plaintiff's case, there is no doubt but that he acted exclusively upon the ground that appellee's arrest by the police officer was illegal and that therefore as a matter of law the municipality was liable for damages. Not only does the record reveal that *921 the court based the directed verdict upon the issue of liability, on the claimed illegality of the arrest, but a review of the record fails to reveal any other ground upon which the directed verdict for the plaintiff could have been based.
The majority opinion recognizes a conflict in the evidence relating to the question of whether an arrest was effected within the city limits of Coral Gables at the time that the plaintiff was stopped for speeding. An arrest has been defined by the Supreme Court of Florida in Melton v. State, Fla. 1954, 75 So.2d 291, 294 as follows:
"It is uniformly held that an arrest, in the technical and restricted sense of the criminal law, is `the apprehension or taking into custody of an alleged offender, in order that he may be brought into the proper court to answer for a crime.' Cornelius, Search and Seizures, 2nd ed. Sec. 47. When used in this sense, an arrest involves the following elements: (1) A purpose or intention to effect an arrest under a real or pretended authority; (2) An actual or constructive seizure or detention of the person to be arrested by a person having present power to control the person arrested; (3) A communication by the arresting officer to the person whose arrest is sought, or an intention or purpose then and there to effect an arrest; and (4) An understanding by the person whose arrest is sought that it is the intention of the arresting officer then and there to arrest and detain him. Cornelius, Search and Seizure, 2nd ed., Sec. 47; 6 C.J.S. Arrest § 1."
Under this definition and in view of the conflict in the evidence as to what the officer did and to whom he spoke at the time that he informed plaintiff, her husband or both, that they were under arrest and should not leave, the question of whether an arrest of the plaintiff was made in the city of Coral Gables was for the jury.
The majority opinion treats this question of fact as immaterial to the disposition of the case because as that opinion holds, regardless of whether the plaintiff escaped, was rescued, was pursued or left lawfully, the subsequent taking into custody by Coral Gables police officers outside the territorial limits of the city was without liability to the city because it was an ultra vires act. I would find the question, of whether an arrest of the plaintiff was made in the city of Coral Gables, material to a determination of the ultimate legality of the arrest because I would not limit municipal liability to the geographic area of the city. The holding that a policeman is no longer a policeman and becomes a private citizen for whom the employer city has no responsibility when he steps outside the physical area of the city, seems more closely related to those artificial limitations used prior to the acceptance of municipal liability for some governmental activity rather than to the idea of liability under the principle of respondeat superior. The acts for which liability would or would not exist under the geographic rule may in each case be the same act and to so limit liability is to hold that a given tort may be compensable on one side of an imaginary line down the center of a street, and uncompensable upon the other side of the street.
In a determination of whether all arrests made outside the city limits are without liability to the city it is necessary to consider two sections of the Florida statutes: section 901.22, dealing with police authority to retake one who escapes or is rescued, and section 901.15, which authorizes certain arrests upon fresh pursuit. The majority opinion does not apply these statutes because of the conclusion that appellant's police officer, absent a warrant, would be without authority under either of these statutes, to take appellee in custody. This conclusion seems invalid in that it would limit the effect of the statutes when the legislature did not so limit their application. The very purpose of the cited sections *922 seems to be to extend beyond certain territorial limits the authority to take persons in custody when the respective conditions of the statutes are met.[1] Thus viewed the cited sections of the Florida statutes are a demonstration of the fact that the city of Coral Gables did not by its charter limit the authority of its police officers to its own city limits. If these police officers were expected to pursue and take into custody persons beyond the territorial limits when certain conditions were met, then all attempts to take into custody outside the territorial limits cannot be said to be ultra vires. Whether the conditions for the applicability of the statute were met under the facts of the case would therefore have to be determined by the trial court if the facts were undisputed or by the jury under proper instruction if the facts were, as I believe, disputed.
My departure from the reasoning of the majority is more fundamental than my conclusion that there is a jury question as to the ultimate legality of appellee's arrest, because I would not hold that the sole determinative question was the legality of such arrest. The area of blending between the rights of an individual and the powers of a municipality to effectively enforce its police regulations, is too fundamental to be severed upon the technical determination of the ultimate legality of a given arrest. This is apparent when it is recognized that courts make such a determination after the fact, with all the advantages of hindsight, while the police officer must make such determination instantly and based only upon police experience and training. Within the area where judgment may lawfully be exercised in a given case, the police officer, endeavoring to protect the public, should not be required to act under the Damocles sword of absolute tort liability for a mistake of judgment.
The range of municipal liability has been recently enlarged in Florida. It is natural that there should be differences of interpretation of that liability upon the crossing of such a relatively unmarked area, but the courts have recognized, since Hargrove v. Town of Cocoa Beach, Fla. 1957, 96 So.2d 130, 60 A.L.R.2d 1193, the need for markers which will indicate the limits of municipal tort liability. In Middleton v. City of Fort Walton Beach, Fla. App. 1959, 113 So.2d 431, 432, it was held that a city was not liable where an arrest by a police officer was pursuant to a warrant regular on its face, but void and known to be such by the arresting officer, even though the clerk of the municipal court had acted falsely and maliciously in issuing the warrant. The opinion holds the described act was quasi-judicial in character and that therefore the city was immune from suit. Further limitations are reiterated as follows:
"Aside from the strict limitation imposed by the above quotation, it is important to note that cases establishing the immunity of a municipality from liability for malicious prosecution (McCain v. Andrews, 139 Fla. 391, 190 So. 616), or for wrongful exercise of legislative functions (Elrod v. City of *923 Daytona Beach, supra), or for wrongful exercise of judicial or quasi-judicial functions (Akin v. City of Miami Beach, supra), were not included in the Hargrove decision as examples of the class of cases inconsistent with each other. The acts involved in the case on appeal are quasi-judicial in character.
"Incalculable mischief to the public welfare would unquestionably follow if the doctrine contended for were established. * * *."
The appellant urges that the limitation expressed in the Middleton case applies and eliminates liability of the city. But I cannot agree that every arrest is quasi-judicial and for the limitation to apply in the instant case such would necessarily be true, because the officers in the instant case acted upon their own judgment.
This court had occasion to consider an action by an individual against a city for alleged wrongful and malicious arrest and unlawful imprisonment. In City of Miami v. Albro, Fla.App. 1960, 120 So.2d 23, 26, it was held that a municipality may be liable for the use by a police officer of excessive force in making an arrest and also for an unreasonable restraint pursuant thereto. We held that under the circumstances of that case the determinative issues were: (1) Whether or not the officer had substantial reason to believe the plaintiff was committing a misdemeanor (i.e. was there reasonable ground for the action of the officer); (2) Whether the force used was reasonable. By way of supporting reasoning it was said:
"Although the Hargrove case, supra, established the liability of the city for the negligent acts of its officers in the performance of governmental functions it does not follow that the duty of care of the city is the same as that of an individual. The law imposes upon the city and the officers thereof duties which they must perform. In the performance of these duties the city and the officers thereof must take actions which an individual is not ordinarily called upon to take. For example, an officer of the city in directing traffic must expose himself to the dangers of traffic, and therefore the standard of care exercised by him must be judged more liberally. See Radtke v. Loud, Fla.App. 1957, 98 So.2d 891, 894. It is unthinkable that a municipal corporation exercising its police power for the protection of the public should be liable in damages for every mistake of judgment by its officers."
In Tweedale v. City of St. Petersburg, Fla.App. 1961, 125 So.2d 920, although dealing with an area in which cities have long been held liable for their torts, it was pointed out that the determination of liability of municipal corporations, in matters as to which liability may exist, is ordinarily made according to the legal rules regarding liability for negligence generally. Citing Woodford v. City of St. Petersburg, Fla. 1955, 84 So.2d 25; Pickett v. City of Jacksonville, 155 Fla. 439, 20 So.2d 484; Ide v. City of St. Cloud, 150 Fla. 806, 8 So.2d 924.
If this guide is followed in the instant case, it must first be determined whether that which the officers did was something their employment contemplated. Cf. Weiss v. Jacobson, Fla. 1953, 62 So.2d 904. Under the facts of the instant case this question must be answered in the affirmative as a question of law because unless the city is barred from liability by the doctrine of ultra vires act, then the city ratified the actions of its police officers by its subsequent conduct toward the appellee and so admitted in its pleadings. There would remain for trial as to liability, the issues of whether the officer who made the arrest had substantial reason to believe the plaintiff was violating a city ordinance and whether the force used was reasonable under the circumstances.
NOTES
[1] Section 901.22, Fla. Stat., F.S.A. appears to restate the approved position on arrest after escape or rescue at common law, which position is set forth in State v. Finch, 177 N.C. 599, 99 S.E. 409, 412, as follows:

"`When an officer holds any person a prisoner in legal custody, on arrest, and the prisoner escapes by force or otherwise, against his will, the officer has a right to his body, and power to retake him, at any place to which he may abscond. It is a matter of no consideration whether his original writ could have been legally served within the jurisdiction in which he retakes him; for he retakes him, not by that writ, but by virtue of the hold he had on him by the arrest. By the common law, if a prisoner escape into another county, in which the sheriff has no jurisdiction, and is there retaken, the retaking is legal, and the prisoner shall have no remedy by audita querela; for he shall not take advantage of his own wrong. Boyton's Case, 3 Co. 43; Ridgeway's Case. Id. 52. [Pearl v. Rawdin, 5 Day (Conn.) 244-249.]'"