CALDWELL, Justice.
This case is here on appeal from the decree of the Circuit Court holding the summary discharge of the appellee-sheriff in violation of his constitutional rights. Several points of law are raised but, in reaching our conclusion, the cardinal question-is whether the County Manager had the power to oust the sheriff, summarily and without notice. The able Chancellor thought not and we concede that, under the form of government conceived by the Founding Fathers of this Nation, he was correct. But here we have an anomalous sort of authoritarianism which has short-circuited the normal democratic process.
The Constitution of Florida, Art. IV, Sec. 15, F.S.A., confers upon the Governor the power of removal of constitutional offices. The Constitutional Amendment creating the appellant government pro *823 vides[1] that the electors of Dade County have power to adopt, revise and amend a home rule charter of government, which charter:
“(f) May abolish and may provide a method for abolishing from time to time all offices provided for by Article VIII, Section 6, of the Constitution [2] or by the Legislature * * * and may provide for the consolidation and transfer of the functions of such offices *
* * * * * *
“(i) * * * provided, however, that the power of the Governor and Senate relating to the suspensión and removal of officers provided for in this Constitution shall not be impaired, but shall extend to all officers provided for in said home rule charter.”
Pursuant to the constitutional grant of power the electors of Dade County, on May 21, 1956, duly adopted a home rule charter which, provides, among other things, that the Board of County Commissioners shall have power to:
“Section 1.01A (19). By ordinance abolish or consolidate the offices of sheriff, constables, or any county office created by the Legislature or provide for the consolidation and transfer of any of the functions of such office * * * ”
The Board of County Commissioners ex■ercised such charter power by enacting on May 6, 1958, what is now Article XII of the ■Code of Metropolitan Dade County, wherein it provided in part as follows:
“Section 2-91. A public safety department is hereby established. The head of this department shall be the public safety director who shall also be known by the title of metropolitan sheriff. The director shall be appointed by and serve at the will of the manager. * * *
“Section 2-93. The office of sheriff of Dade County provided for by the Constitution of this state is hereby abolished and all powers, functions and equipment of such office are hereby transferred to the department of public safety. * * ”
Section 3.04(B) of the charter was amended by the electors of Dade County at a special election held on August 21, 1962, to empower the County Manager to appoint all department heads including the head of the Department of Public Safety, with approval by the County Commission but provided “the right to suspend, remove, or discharge any department head, with or without cause, is reserved at all times to the County Manager.”
This Court in Dade County v. Kelly, 99 So.2d 856 (1959), held that, although Dade County could not strip piecemeal duties and functions from the sheriff’s office, it could, by appropriate ordinance, transfer all such duties and functions to some other agency and, inferentially at least, by ordinance, abolish the office of sheriff.
To the argument that such arbitrary power was never intended or, if intended, is violative of the Constitution of the State of Florida, we can only hold that, although it may be bad government, it is not unconstitutional because, at the behest of Dade County, the people of Florida approved the Amendment, supra, which granted the right to exercise such powers. In the language of George Washington’s “Farewell Address” we must hold:
“If in the opinion of the people, the distribution or modification of the Constitutional powers be in any particular wrong, let it be corrected by an amendment in the way which the Constitution *824 designates. But let there be no- change by usurpation; for though this, in one instance, may be the instrument of good, it is the customary weapon by which free governments are destroyed.”
It is our conclusion that the appellañt, under its charter and pertinent ordinances, had the power to abolish the appellee’s office of County Sheriff, to hire the appellee on a daily basis to serve at the will of the manager and to fire him without cause or notice.
The decree of the Chancellor is reversed and this cause remanded for action not inconsistent with this decision.
ROBERTS, C. J., and TERRELL, THOMAS, DREW and THORNAL, JJ., concur.
O’CONNELL, J., concurs in judgment.

. Fla.Con., Art. VIII, § 6:
“The Legislature shall provide for the ■election by qualified electors in each eounty of the following County Officers: A Clerk of the Circuit Court, a Sheriff, Constables * * (Emphasis added-ed)