**John MADISON and Kim Madison, Plaintiffs-Appellants,**

v.

**Richard E. GERSTEIN and E. Wilson Purdy, Defendants-Appellees.**

**No. 29390.**

United States Court of Appeals, Fifth Circuit.

March 24, 1971.

Richard Kanner, Miami, Fla., for plaintiffs-appellants.

Thomas C. Britton, County Atty., Joseph D. Komansky, Asst. Co. Atty., Jos. W. Womack, Miami, Fla., for defendants-appellees.

Before BELL, DYER and RONEY, Circuit Judges.

RONEY, Circuit Judge:

This suit is brought by California residents against Richard E. Gerstein, the State Attorney, and E. Wilson Purdy, the Director of Public Safety and Sheriff, of Dade County, Florida, for damages for common law malicious prosecution and false arrest and for invasion of civil rights under 42 U.S.C. §§ 1983, 1985(1) and 1986. It emanates from a criminal prosecution against the plaintiffs for child abuse, which was dismissed prior to trial. The District Court directed a verdict for the defendants. We affirm.

On July 19, 1967, the 5½ month old daughter of the plaintiffs was examined at Jackson Memorial Hospital, Dade County, Florida, and discovered to have two sewing needles completely implanted in her body, one in the armpit and one in the chest. Following an investigation by a Dade County deputy sheriff, an information was filed by the Dade County State Attorney's office on August 23, 1967, charging the Madisons with unlawfully torturing, punishing or injuring a minor child in violation of Section 828.04, Florida Statutes, F.S.A.[1] A warrant of arrest was issued the same day and was executed on September 12, 1967, when the plaintiffs voluntarily appeared at the

---

1. Florida Statutes, § 828.04, F.S.A. "Whoever tortures, torments, cruelly or unlawfully punishes, or willfully, unlawfully or negligently deprives of necessary food, clothing or shelter any person under the age of sixteen years, and whoever torments, deprives of necessary sustenance or raiment, or unnecessarily or excessively chastises, or mutilates his child or ward, or whoever deprives such child or ward of necessary treatment and attention, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by imprisonment not exceeding six months, or by fine not exceeding five hundred dollars."

Public Safety Department. The plaintiffs were processed and released a couple of hours later into the custody of their attorney. On November 22, 1967, after the case had been set for trial on two separate occasions but continued each time on motion of the State Attorney, it was dismissed for want of prosecution with leave to refile. The child was returned to appellants by the Juvenile Court, which had taken custodial jurisdiction of the child pending the criminal proceedings. This suit followed.

## I. State Attorney.

The dismissal of the case against the State Attorney presents little difficulty. The stipulated record on this appeal brings the case squarely within the official immunity doctrine recognized by our opinion in the prior appeal of this case. Madison v. Purdy, 410 F.2d 99 (5th Cir. 1969).

That appeal was from the District Court's dismissal of the complaint against the State Attorney on the ground of official immunity. In reversing, we held that the official immunity of a prosecutor would not protect this defendant from a claim for damages for acts directed by him which might be outside his jurisdiction and without authorization of law. Lewis v. Brautigam, 227 F.2d 124 (5th Cir. 1955). The allegations of the complaint viewed in the light most favorable to the plaintiff left room for the proof of such facts.

However, no such facts are presented on this appeal. To the contrary, the case comes to us on the following stipulation:

" * * * The acts complained of were those of a deputy sheriff and Assistant State Attorney acting within the scope of their official authority and who were not party defendants. Neither defendant directed nor had any personal knowledge of the facts in this case."

■ Under this set of facts, it is not necessary for us to determine whether or not the State Attorney is responsible for the acts of his assistant, as asserted by the appellants. Even if there were vicarious liability, which we do not decide, the Assistant State Attorney is also a prosecuting attorney and enjoys official immunity for acts committed within the scope of his jurisdiction. Madison v. Purdy, *supra*. Clearly this defendant could have no vicarious liability for the acts of his assistant against which the assistant himself is immunized.

The principle of judicial immunity had been "the settled doctrine of the English courts for many centuries" when adopted by our Supreme Court[2] and was not abolished by § 1983, "which makes liable 'every person' who under color of law deprives another person of his civil rights."[3] This immunity has been extended to prosecutors, who are considered part of the judicial process. Bauers v. Heisel, 361 F.2d 581 (3d Cir. 1966).[4]

■ Such doctrine is not for the benefit of the defendant, but for the benefit of the public whose interest it is that quasi-judicial officers should be at liberty to exercise their functions with independence and without fear of consequences.[5]

2. Bradley v. Fisher, 13 Wall. 335, 347, 20 L.Ed. 646 (1871).

3. Pierson v. Ray, 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967); cf. Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951).

4. See footnote 7, 361 F.2d p. 586, for a comprehensive collection of cases.

5. The considerations favoring a prosecutorial immunity include the threat of litigation which may affect the integrity of a prosecutor's decision-making; frivolous lawsuits which might occupy large portions of their official time; and potential liability which might deter qualified people from public service. Note, Civil Rights—Section 1983—Prosecuting Attorney Held Immune From Civil Liability for Violation of Civil Rights Act, 42 N.Y.U.L.Rev. 160 (1967).

As Judge Rives stated in Lewis v. Brautigam, *supra*:

"A prosecuting attorney has many duties involving the exercise of grave discretion in the performance of which he is a quasi-judicial officer representing the state. Segars v. State, 94 Fla. 1128, 115 So. 537; 42 Am.Jur., Prosecuting Attorneys, § 2. Ordinarily, when so acting, he cannot be compelled to answer to a private citizen for errors in the determination either of law or of fact."

The case was properly dismissed as to Richard E. Gerstein, the State Attorney, on the defense of official immunity.

## II. Director of Public Safety and Sheriff.

█ As a law enforcement officer, defendant E. Wilson Purdy does not enjoy the cloak of immunity of the quasi-judicial prosecuting attorney.[6] It is therefore necessary for us to determine if he is vicariously liable for the acts of his deputy.

### A.

█ Florida law clearly burdens the traditional sheriff with vicarious liability for the acts of his deputy acting within the scope of his official authority and by virtue of his office. Waters v. Dade County, 169 So.2d 505 (Fla.App.1964). The office of Sheriff is a county office created by the Constitution of the State of Florida, Article VIII, Section 6. By statute, the sheriff is given the power to appoint deputies and is made responsible for their neglect and default.[7]

The Florida Supreme Court has held that neither knowledge nor consent is an essential condition to liability. Mendez v. Blackburn, 226 So.2d 340 (Fla.1969).

Purdy argues, however, that this liability of the Florida sheriff only extends to abuse of power by his deputy, and not to a usurpation of power. Swenson v. Cahoon, 111 Fla. 788, 152 So. 203 (1933); Malone v. Howell, 140 Fla. 693, 192 So. 224 (1939); Holland v. Mayes, 155 Fla. 129, 19 So.2d 709 (1944).

We believe that the stipulated fact that the deputy acted within the scope of his official authority, together with the record in this case, could reflect an abuse of power, for which there is derivative liability, rather than a usurpation of power, for which there is not. A directed verdict would not be proper on this ground under the law as it applies to sheriffs.

### B.

█ Defendant Purdy contends that his position in Dade County is different from the traditional office of sheriff in Florida, and that a different rule should control. By Constitutional amendment adopted in 1956, Dade County was permitted to adopt a home rule charter under which the Board of County Commissioners would be the governing body.[8] The Charter could, and as adopted did, abolish the office of sheriff as provided in the Constitution.[9] It transferred all the functions and duties of the sheriff to a newly created Public Safety Department, headed by a Public Safety Director, who is also known as the metropolitan sheriff.[10] Said Public Safety Direc-

6. Pierson v. Ray, *supra*, 386 U.S. at p. 555, 87 S.Ct. 1213.

7. Florida Statutes, § 30.07, F.S.A. "Sheriffs may appoint deputies to act under them who shall have the same power as the sheriff appointing them, and for the neglect and default of whom in the execution of their office the sheriff shall be responsible." See also Florida Statutes, §§ 30.09(3) and 30.55(1), F.S.A.

8. Florida Constitution, Article VIII, Section 11. See Gray v. Golden, 89 So.2d 785 (Fla.1956).

9. Florida Constitution, Article VIII, Section 11(1) (f). "May abolish and may provide a method for abolishing from time to time all offices provided for by Article VIII, Section 6, of the Constitution * * *."

10. See Dade County v. Kelly, 99 So.2d 856 (Fla.1957).

tor and Sheriff is a department head within the executive arm of the local government.[11]

Florida has sustained the constitutionality of Dade County's power to hire the person holding that office on "a daily basis to serve at the will of the manager and to fire him without cause or notice."[12] Purdy further argues that he does not have complete authority to hire and fire his deputies, who are apparently protected by civil service laws. Based upon these differences between his office and that of a Constitutional sheriff, Purdy asserts his position is analogous to that of a police chief, who is generally held to be liable only for the acts of subordinates which he orders, directs, participates in, or approves, and who has no vicarious or imputed liability for those acts done without his direction or personal knowledge, as stipulated here. See, e. g., Anderson v. Nosser, 5 Cir., 1971, 438 F.2d 183; Salazar v. Dowd, 256 F.Supp. 220 (D.Col.1966); Runnels v. Parker, 263 F.Supp. 271 (C.D.Cal. 1967); Mack v. Lewis, 298 F.Supp. 1351 (S.D.Ga.1969); Sanberg v. Daley, 306 F.Supp. 277 (N.D.Ill.1969).

The basis for the distinction is said to be that, traditionally, sheriff's deputies act in the name of the sheriff in a representative capacity, whereas a police officer, like the police chief, is a public servant in his own right. Jordan v. Kelly, 223 F.Supp. 731, 738 (W.D.Mo.1963). Underlying this rationale is the difference in selection and tenure between the sheriff and the police chief, and the employment of their subordinates.

This is a mattter controlled by Florida law. We have been cited no Florida cases or legislative authority which determine the point.

However, we believe that Purdy's argument is sound and that it is reasonable to assume that Florida would so hold, if confronted squarely with this issue. To assume otherwise would require the conclusion that Florida would burden this office with derivative liability even though it has excised the basic characteristics of the traditional sheriff's office which supported such liability.

We sustain the District Court's dismissal of this case against E. Wilson Purdy, the Public Safety Director and Sheriff on the ground that he is not liable for the acts of his deputy which he did not direct and of which he had no personal knowledge.

### III.

A complete review of the record generally sustains the argument that no civil rights were violated and that there was neither malicious prosecution nor false arrest in this case. It may be that the District Court could have properly directed a verdict on this ground. We make no decision on these points since there is some doubt as to whether appellant had concluded his case on the merits when he conceded that he had nothing further to offer on the issues we have discussed.

Affirmed.

---

11. Kelly v. McNayr, 175 So.2d 568 (Fla. App.1965) and McNayr v. Kelly, 184 So. 2d 428 (Fla.1966).

12. Dade County v. Kelly, 153 So.2d 822, 824 (Fla.1963).