679 So.2d 729 (1996)
Morris H. McGHEE, II, Petitioner,
v.
VOLUSIA COUNTY, etc., et al., Respondents.
No. 85695.
Supreme Court of Florida.
July 3, 1996.
Rehearing Denied September 12, 1996.
Elizabeth H. Faiella of Elizabeth H. Faiella, P.A., Winter Park; and Marcia K. Lippincott of Marcia K. Lippincott, P.A., Orlando, for Petitioner.
Tura Schnebly Broughton, Assistant County Attorney, DeLand, for Respondent.
Barbara Green, Coral Gables; and Roy Wasson, Miami, for Academy of Florida Trial Lawyers, amicus curiae.
William J. Roberts and William Paul Huey of Roberts & Egan, P.A., Tallahassee, for Florida Association of Counties, Inc., amicus curiae.
*730 KOGAN, Chief Justice.
We have for review McGhee v. Volusia County, 654 So.2d 157 (Fla. 5th DCA 1995), which expressly and directly conflicts with the opinion in Swenson v. Cahoon, 111 Fla. 788, 152 So. 203 (1933). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
The plaintiff Morris McGhee was arrested by Volusia County Deputy George T. Hernlen in September 1990. During booking procedures, McGhee was in handcuffs. McGhee testified that, at some point, he told Hernlen that "you all" were no longer welcome in his father's saw shop, where deputies apparently had come on occasion. According to McGhee, Hernlen asked if McGhee was threatening him, and Hernlen then lunged at McGhee, grabbed him by the throat, and began kicking McGhee with force. McGhee later sued Hernlen and the county. The trial court dismissed the action as it pertained to Volusia County. The Fifth District sitting en banc affirmed five-to-three on grounds Hernlen acted beyond the scope of his duties in attacking McGhee.
Section 768.28(9)(a), Florida Statutes (1989), provides that Florida's waiver of sovereign immunity does not apply to, and governmental employees may be personally liable for, acts beyond the scope of their duties, committed in bad faith or with malicious purpose, or that exhibited wanton and wilful disregard of human rights, safety, or property. This exception to the waiver must be read in pari materia[1] with the general waiver statute, which states simply that the governmental agency is liable for
the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of his office or employment under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant.
§ 768.28(1), Fla. Stat. (1989) (emphasis added). The instant dispute centers on whether the allegations against Officer Hernlen, if true, constituted conduct falling outside the waiver of liability. If they did, then the sheriff cannot be held liable and summary dismissal was appropriate. If not, the sheriff may incur liability, and the trial and district courts erred in approving a summary dismissal.
The law governing liability of police agencies for the improper acts of their employees dates from the earliest years of Florida law. As Justice Glen Terrell noted, the early common law of Florida made sheriffs liable for the actsas opposed to omissionsof deputies performed within the scope of their legal authority. Swenson v. Cahoon, 111 Fla. 788, 789, 152 So. 203, 203 (1933). In 1834, the territorial council of Florida codified the common law as it then existed in chapter 744, Laws of Florida Territory (1834).[2] Subsequently, the 1868 legislature refined the statute, but once again it did so without repealing the common law doctrine. Swenson, 111 Fla. at 790, 152 So. at 203. Instead, the legislature simply added a new liability sheriffs would assume for certain omissions of their deputies.[3] The resulting effect was succinctly described by Justice Terrell when he noted that, by this statute, a sheriff now would be held liable "for the neglect and default of his deputies in the execution of their office." Swenson, Id. at 789, 152 So. at 203.
After making this observation, Justice Terrell stated that the statute in question continued *731 to coexist with the common law rule pertaining to acts (but not omissions) of deputies. This case law illuminates the question of when a jury question exists as to the sheriff's liability. Justice Terrell described this liability in the following terms:
[O]nly those acts of a deputy that involve an abuse of power reposed in him and not those involving a usurpation of power will the sheriff be required to answer for.
Id. at 790, 152 So. at 204. Terrell further stated:
To abuse power is to use it in an extravagant manner, to employ it contrary to the law of its use, or to use it improperly and to excess. The usurpation of power has reference to the unlawful assumption, or seizure and exercise of power not vested in one, or where one interrupts another in the exercise of a right belonging to him.
Id. at 792-93, 152 So. at 204 (on rehearing). Later cases have explained the distinction in similar fashion: Acts conducted by virtue of office may result in liability for the sheriff,[4] whereas acts that are merely by color of office would not.[5]Malone v. Howell, 140 Fla. 693, 700-01, 192 So. 224, 227 (1939).
We therefore must take note that in 1981 the Court, speaking through Justice Overton, held that the waiver of sovereign immunity contained in section 768.28, Florida Statutes (Supp.1974), did not at that time alter the common law definition of "scope of employment" outlined above. Beard v. Hambrick, 396 So.2d 708, 712 (Fla.1981). This holding rested in part on the long-established rule that no change in the common law is intended unless the statute either speaks plainly in this regard or cannot otherwise be given effect. Carlile v. Game & Fresh Water Fish Comm'n, 354 So.2d 362 (Fla.1977).
The Beard Court, however, did limit its holding to cases arising prior to the amendments to section 768.28 contained in chapter 80-271, section 1, Laws of Florida. Id. We have not revisited the question in the interim. To these amendments we now must turn, since their language forms the core of the present dispute.
As codified at the relevant times, the 1980 amendments stated:
The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.
§ 768.28(9)(a), Fla. Stat. (1989). The district courts have had occasion to interpret this statutory language on only a few occasions since its passage.
Though these opinions dealt with law enforcement agencies other than sheriffs, we find nothing in Florida law indicating that different police agencies should be subjected to differing standards in tort actions. Accordingly, these cases have persuasive value.
In Hennagan v. Department of Highway Safety & Motor Vehicles, 467 So.2d 748 (Fla. 1st DCA 1985), the court confronted a situation in which a Highway Patrol officer allegedly had "arrested" a minor child pretextually so that he later could sexually molest her. The trial court dismissed the complaint against the department on grounds the officer had exceeded the scope of his employment, *732 thereby rendering the department immune. The district court reversed on the following rationale:
Conduct is within the scope of employment if it occurs substantially within authorized time and space limits, and it is activated at least in part by a purpose to serve the master. The purpose of the employee's act, rather than the method of performance thereof, is said to be the important consideration.
Id. at 751. We agree that this analysis would be equally true under the law as it exists today. The officer's misconduct, though illegal, clearly was accomplished through an abuse of power lawfully vested in the officer, not an unlawful usurpation of power the officer did not rightfully possess.
A second case is Richardson v. City of Pompano Beach, 511 So.2d 1121 (Fla. 4th DCA 1987), review denied, 519 So.2d 986 (Fla.1988). There the court confronted a situation in which a city police officer allegedly used excessive force in committing a false arrest. Like Hennagan, the court concluded that earlier principles defining the "scope of employment" test remained good law. Applying them to the case, the Richardson court concluded that acts did not fall beyond the scope of the officer's employment merely because they were intentional. Instead, the employing agency could assume liability in that situation, and summary dismissal was not proper. Id. at 1123-24. Once again this showed a case of lawful power abused, not of an unlawful usurpation of authority.
Our research also has disclosed a relevant summary prepared on May 2, 1980, for the House Committee on Governmental Operations by then-staff attorney Carol M. Browner. In pertinent part it states:
The Florida Supreme Court recently held that subsection (9) of Section 768.29[sic], Florida Statutes (1975), did not prevent a state officer, employee or agent from being made a party defendant in an action for injuries or damages suffered as the result of an act, event, or omission of action in the scope of his employment. Moreover, the court held, that the employee would be personally liable for that portion of a judgment rendered against him which exceeded the state's liability limits.
While this case was pending, the 1979 Legislature passed SB 474, which amended subsection (9) of Section 768.29[sic], Florida Statutes, in an attempt to clearly prevent personal liability of public employees. Although the Supreme Court did not address the 1979 legislation, there is some concern in light of their recent opinion, that the 1979 legislation does not in fact achieve the results intended, to wit: no personal liability for employees acting within the scope of their employment.
....
The need for such a clear statement preventing personal liability of public employees for damages or injuries suffered as a result of an act, event or omission of action occasioned within the scope of their employment is evidenced by the Florida Supreme Court's statement that the "absence of an explicit prohibition against suing public employees for their torts suggests that none was intended."
Fla. H.R. Comm. on Govtl. Ops., PCB 31 (1980) Staff Analysis 1 (May 2, 1980) (State Archives Collection).
The quotation highlighted in the last sentence comes from our opinion in District School Board v. Talmadge, 381 So.2d 698, 702 (Fla.1980), limited, Rupp v. Bryant, 417 So.2d 658, 661 (Fla.1982). The essential holding of Talmadge was succinctly summarized in that opinion:
For those actions which fall within the purview of section 768.28, plaintiffs have a range of litigation options:
(1) The plaintiff can invoke the provisions of section 768.28 and sue both the state and employee jointly. The state then becomes obligated, under the second sentence of subsection (9), to pay any judgments to the extent of the monetary limitations set forth in subsection (5). The negligent employee remains personally liable for that portion of a judgment rendered against him which exceeds the state's liability limits.
(2) The plaintiff can invoke the provisions of section 768.28 and sue the state *733 alone. The state's liability, of course would be limited by subsection (5).
(3) The plaintiff can sue the employee alone without invoking section 768.28, under traditional legal principles regarding tort actions against public employees.
Talmadge, 381 So.2d at 703 (footnotes omitted). Reading this quotation in light of the 1980 staff analysis, it is obvious that the purpose underlying the 1980 amendments was to abrogate the first and third holdings to the extent an employee's conduct fell within the scope of employment.[6] The staff summary indicates no intent to alter the then-existing law defining "scope of employment", which is relevant to the issue of whether a jury question exists. Indeed, the post-1980 district court decisions outlined above plainly rest on the assumption that this earlier law had not been modified.
We thus conclude that the intent behind the 1980 amendments was to extend the veil of sovereign immunity to the specified governmental employees when they are acting within the scope of employment, with the employing agency alone remaining liable up to the limits provided by statute. That veil is lifted only where the employee's act fell outside the scope of employment, in which event sovereign immunity then shields the employing agency from liability. In any given situation either the agency can be held liable under Florida law, or the employee, but not both. Moreover, there was no legislative intent to change the traditional law defining "scope of employment," which has been consistently applied to law enforcement agencies even after the amendment was made. This conclusion is in keeping with the rule that a statute will not be construed to modify the common law unless such intent is evident or the statute cannot otherwise be given effect.
Under Swenson, a jury question as to the sheriff or employing agency's liability exists for acts of officers that can be described as abuses of lawful power. The employing agency is immune as a matter of law only if the acts are so extreme as to constitute a clearly unlawful usurpation of authority the deputy does not rightfully possess, Swenson, or if there is not even a pretense of lawful right in the performance of the acts. Craft v. John Sirounis & Sons, Inc., 575 So.2d 795 (Fla. 4th DCA 1991). Here, Deputy Hernlen clearly had the lawful authority to restrain arrestees, detain them, or even respond with force in appropriate situations. His office gave him that authority, and he therefore cannot be described as a usurper. The fact that Hernlen may have intentionally abused his office does not in itself shield the sheriff from liability. In sum, the question must be put to the fact-finder whether Deputy Hernlen acted in bad faith, with malicious purpose, or in a manner exhibiting wanton or wilful disregard of human rights, safety, or property.[7]See § 768.28(9)(a), Fla. Stat. (1989).
The decision of the district court below is quashed and this cause is remanded for further proceedings consistent with our views here.
It is so ordered.
OVERTON, SHAW, HARDING and ANSTEAD, JJ., concur.
GRIMES, J., concurs in result.
WELLS, J., concurs specially with an opinion, in which GRIMES and HARDING, JJ., concur.
WELLS, Justice, specially concurring.
I concur in the majority's holding that the trial court erred in the granting of summary judgment. I write separately, however, because I am concerned that the majority opinion could be read so as to give no legal effect to a provision of the sovereign immunity statute. I am also concerned that this opinion will be read to impose a distinct standard upon which to determine the applicability of this statute to sheriff's deputies when, in my view, the same standard that applies to sheriff's *734 deputies also applies to all governmental employees.
Section 768.28, Florida Statutes (1995), sets forth the waiver of sovereign immunity for the state itself and its agencies or subdivision for liability for torts. For purposes of this statute, "state agencies or subdivisions" are defined in section 768.28(2)[8] and include sheriffs. See Beard v. Hambrick, 396 So.2d 708 (Fla.1981).[9] Section 768.28(9)(a) provides:

No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. However, such officer, employee, or agent shall be considered an adverse witness in a tort action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of his employment or function. The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by action against the governmental entity, or the head of such entity in his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

§ 768.28(9)(a), Fla. Stat. (1995) (emphasis added).
A reading of the plain language of the statute reveals that a governmental entity is liable for the actions of its employee unless the employee is either not acting within the scope of employment or is acting in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. See Richardson v. City of Pompano Beach, 511 So.2d 1121 (Fla. 4th DCA 1987), review denied, 519 So.2d 986 (Fla.1988). These two bases should remain distinct, as a finding of either one will revoke the waiver of sovereign immunity. The majority does not give clear effect to this latter basis for revocation, which must not be written out of the statute.
The majority relies on the pre-sovereign-immunity case of Swenson v. Cahoon, 111 Fla. 788, 152 So. 203 (1933), to set forth the standard that a jury question exists in this case over whether the sheriff is liable for the acts of deputies. While the sovereign immunity statute does not overrule Swenson, the statute intends the same standard for sheriffs as for other officers, employees, or agents to which the act applies. I would adopt Judge Dauksch's statement in the dissenting opinion in this case, which sets forth the appropriate standard for a determination of whether governmental employees are within the scope of employment:
Conduct is only within the "scope of employment" within the meaning of the sovereign *735 immunity statute if it is the type of conduct which the employee is hired to perform, it occurs substantially within the time and space limits authorized or required by the work to be performed, and conduct is activated at least in part by a purpose to serve the employer. Craft v. John Sirounis and Sons, Inc., 575 So.2d 795 (Fla. 4th DCA 1991). When differing inferences may be drawn concerning whether an employee is operating within the scope of employment, the question is generally for the jury. See Weiss v. Jacobson, 62 So.2d 904 (Fla.1953).
McGhee v. Volusia County, 654 So.2d 157, 161 (Fla. 5th DCA 1995) (Dauksch, J., dissenting).
In addition, however, I believe the jury should be instructed that if it determines that the employee's act was in bad faith or with malicious purpose, or in a manner exhibiting wanton or willful disregard of human rights, safety, or property, the sheriff is not liable, but the employee is. It must be clear that to properly determine the liability of the sheriff or of the employee, the jury must consider both the issue of the scope of employment and the conduct issues set forth in the statute.
Petitioner was attacked in the sheriff's department offices while the petitioner was under arrest and handcuffed and during the time in which the deputy was filling out petitioner's paperwork. Consequently, I agree that there is a factual dispute as to whether Deputy Hernlen was acting within the scope of his employment. I believe there is also a factual issue as to whether Hernlen's actions were committed in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. We should directly order that both issues be submitted to the fact-finder.
GRIMES and HARDING, JJ., concur.
NOTES
[1] The doctrine of in pari materia requires the courts to construe related statutes together so that they illuminate each other and are harmonized. See Singleton v. Larson, 46 So.2d 186 (Fla.1950). "In pari materia" in Latin means "on the same matter."
[2] The territorial act stated in pertinent part:

Be it enacted by the Governor and Legislative Council of the Territory of Florida, that the Sheriffs and Clerks of Superior County Courts in the respective Counties, shall have the power respectively of appointing a deputy or deputies, for whose acts as such, they, the said Sheriffs and Clerks shall be held liable.
Ch. 744, § 1, Laws of Fla. Terr. (1834) (emphasis added).
[3] The 1868 act provided in pertinent part:

Sheriffs may appoint deputies to act under them, who shall have the same power as the sheriffs appointing them, and sheriffs shall be responsible for the neglect and default of their deputies in the execution of their office.
Ch. 1,659, § 4, Laws of Florida (1868).
[4] The Court explained that acts are "by virtue of office" if "they are within the authority of the officer, but done in an improper exercise of his authority or in abuse of the law." Malone v. Howell, 140 Fla. 693, 702, 192 So. 224, 227 (1939).
[5] In this context, acts are "by color of office" if they involve "[a] pretense of official right to do an act made by one who has no such right." Malone, 140 Fla. at 701, 192 So. at 227. We emphasize that there also would be situations in which an officer's misconduct is so dimly related to employment duties that it does not even rise to the level of showing a "pretense of official right." A case demonstrating the point is Craft v. John Sirounis & Sons, Inc., 575 So.2d 795 (Fla. 4th DCA 1991), where off-duty police officers not dressed in official gear became embroiled in a barroom brawl. There the court rightly found the misconduct outside the scope of employment. In other words, the brawl was a purely personal foray into tortious conduct without any pretense of official right, for which the officersnot their employerswould be liable.
[6] We so hold.
[7] We emphasize, however, that this holding is based on the questions presented by the facts at hand. There may be cases in which summary dismissal would be proper based on different facts.
[8] This section provides:

As used in this act, "state agencies or subdivisions" include the executive departments, the Legislature, the judicial branch (including public defenders), and the independent establishments of the state; counties and municipalities; and corporations primarily acting as instrumentalities or agencies of the state, counties, or municipalities, including the Spaceport Florida Authority.
§ 768.28(2), Fla. Stat. (1995).
[9] In Beard, we held that under article VIII, section 1, Florida Constitution, sheriffs were officials of political subdivisions of the state and were covered by this statute. See Beard, 396 So.2d at 711. Even though that holding of Beard was limited to cases arising prior to the 1980 amendments to section 768.28, subsection (2) of that statute was not significantly affected by these amendments; therefore, Beard should still control on this point.