Sedric Lyndell MOORE, Plaintiff,

v.

MIAMI–DADE COUNTY, Anthony Corbin, and in his official capacity as a police officer of Miami–Dade county, Kenneth Newry, individually and in his official capacity as security officer of Miami–Dade County, Defendants.

No. 06–22705–CIV.

United States District Court, S.D. Florida.

July 18, 2007.

John Dennis Golden, Golden & Grimes LLP, Miami, FL, for Plaintiff.

Bernard Pastor, Miami, FL, for Defendants.

*ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; DISMISSING COMPLAINT WITHOUT PREJUDICE WITH LEAVE TO AMEND*

ALAN S. GOLD, District Judge.

This cause came before the Court on Defendants' Motion to Dismiss [DE 5], filed November 20, 2006. Having reviewed the Motion, Response, and Reply, I grant Defendants' Motion to Dismiss. However, I dismiss Plaintiff's Complaint without prejudice, with leave to amend.

## I. Factual Background

The following facts from the First Amended Complaint are assumed to be true for purposes of evaluating the Motion to Dismiss. Plaintiff Sedric Moore ("Moore"), was employed as a longshoreman at the Port of Miami–Dade County. (First Am. Compl. ¶ 9). On April 23, 2003, Moore reported to work at approximately 6:30 a.m. (*Id.* ¶ 10). Moore attempted to enter the port security gate, while in his vehicle, but was unable enter because his security card did not work. (*Id.*). Defendant Kenneth Newry ("Newry") was employed by the Port of Miami–Dade County as a security guard, and was working at the gate that morning. (*Id.* ¶ 11). After Moore's ID card did not work, Newry did not allow Moore entry, and took possession of Moore's ID card. (*Id.*). Newry instructed Moore to return to the ID office. (*Id.*). Moore then informed Newry that he had recently been issued a new ID card and had been having problems with it, and requested that Newry verify his eligibility to enter. (*Id.* ¶ 12). The Complaint is not entirely clear as to what happened next, but it appears that Newry took several of Moore's personal belongings along with the ID card. (*Id.* ¶ 13). Plaintiff then requested that his personal belongings be returned to him, and after an exchange of words, Officer Newry returned his personal belongings. (*Id.* ¶ 14). Newry instructed Moore again to return to the ID card office. (*Id.*).

Thereafter, Moore telephoned Ms. Frances Ladson of the ID card office to explain the situation, and was instructed to return to the gate and request to speak with Sgt. Gonzalez of the Miami–Dade Police Department for assistance. (*Id.* ¶ 15). Moore approached the gate in his vehicle at approximately 6:45 a.m., and was instructed by Newry to exit the entryway. (*Id.* ¶ 17). When Moore explained that he needed to speak with Sgt. Gonzalez, Newry replied that he did not care. (*Id.*). Moore then pulled his car forward, and exited the vehicle. (*Id.* ¶ 18). At that

time, Newry left his guard booth and charged Moore and struck him with his chest. (*Id.* ¶ 19). Moore tried to leave; however, Newry struck him a second time to which he responded by attempting to wrestle Newry to the ground. (*Id.* ¶ 20). During the altercation, Newry struck Moore about the head with his radio. (*Id.* ¶ 21). At that point, Miami–Dade Police officer Fiston arrived on the scene and ordered that Moore be taken into custody. (*Id.*). Moore was taken into custody, strip searched, charged, and treated at Jackson Memorial Hospital for his injuries. (*Id.* ¶ 22). He was released at 9:00 p.m. that evening. (*Id.*).

A criminal action was filed by Defendant Miami Dade Police officer Anthony Corbin ("Corbin") against Moore. (*Id.* ¶ 23). The case was ultimately dismissed by the State Attorney's Office. (*Id.*).

Moore has filed a four-count Complaint. In Count I, Plaintiff asserts a false arrest claim, and seeks a civil remedy pursuant to 42 U.S.C. § 1983 against Miami–Dade County, Port Security Officer Newry, and Officer Corbin. (*Id.* ¶¶ 24–29). In Count II, Plaintiff asserts a state law claim for false imprisonment against Miami–Dade County, Port Security Officer Newry, and Officer Corbin. (*Id.* ¶¶ 30–33). In Count III, Plaintiff asserts a state law claim for malicious prosecution against Miami–Dade County, Port Security Officer Newry, and Officer Corbin. (*Id.* ¶¶ 34–36). In Count IV, Plaintiff asserts a state law claim for battery against Miami–Dade County, Port Security Officer Newry, and Officer Corbin. (*Id.* ¶¶ 37–39).

Defendants have moved collectively to dismiss Plaintiff's Complaint on various grounds, set forth below.

## II. Standard of Review

As the Supreme Court recently held in *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007), a complaint must be dismissed pursuant to Fed.R.Civ.P. (12)(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Although a plaintiff need not state in detail the facts upon which he bases his claim, "Rule 8(a)(2) still requires a 'showing', rather than a blanket assertion, of entitlement to relief." *Bell Atlantic*, 127 S.Ct. at 1965, n. 3 (2007). In other words, a plaintiff's pleading obligation requires "more than mere labels and conclusions." *Id.* at 1964–65; *See also Pafumi v. Davidson*, No. 05–61679–CIV, 2007 WL 1729969 at *2 (S.D.Fla. Jun. 14, 2007).

The previous standard that there be "no set of facts" before a motion to dismiss is granted has thus been abrogated in favor of one that requires a pleading to be "plausible on its face." *Id.* at 1968, 1974 (discussing *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In order to survive a motion to dismiss, the plaintiff must have "nudged [his or her] claims across the line from conceivable to plausible." *Id.* at 1974.

While the Eleventh Circuit has yet to speak on the *Bell Atlantic* standard and the breadth of its holding, other circuits have had the opportunity to apply it. *See In re Ocwen Loan Servicing, LLC Mortgage Servicing Litigation*, 491 F.3d 638, 649 (7th Cir.2007) (explaining that a district court should now determine "whether the complaint contains 'enough factual matter (taken as true)' to provide the minimum notice of the plaintiffs' claim that the Court believes a defendant is entitled to."); *Marrero–Gutierrez v. Molina*, 491 F.3d 1, 9–10 (1st Cir.2007) (applying the *Bell Atlantic* Standard to a claim of political discrimination); *Iqbal v. Hasty*, 490 F.3d 143, 157 (2nd Cir.2007) ("we believe the [U.S.

Supreme] Court is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible "plausible standard." "); *White v. Ockey*, —— Fed. Appx. ——, ——, No. 06–4225, 2007 WL 1600483 at *3 (10th Cir. Jun. 5, 2007) (holding that plaintiff's claim failed to allege enough facts to state a claim under Fair Housing Act).

In determining whether to grant a motion to dismiss, the court must accept all the factual allegations in the complaint as true and evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *Hoffend v. Villa*, 261 F.3d 1148, 1150 (11th Cir.2001). Moreover, I reiterate that Fed.R.Civ.P. 12(b) prohibits me from looking beyond the "four corners" of Plaintiff's First Amended Complaint or considering any additional allegations Plaintiff included in his Response.[1]

 Furthermore, when a governmental official, sued individually, asserts qualified immunity as is the case here, controlling Eleventh Circuit precedent imposes a "heightened pleading" standard for the complaint instead of the minimal notice pleading required by Rule 8. A dismissal motion grounded on the defendant's qualified immunity requires the court to accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Dalrymple v. Reno*, 334 F.3d 991, 994–995 (11th Cir.2003). Only "well-pleaded facts" and "reasonable inferences drawn from those facts" should be accepted. *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992). "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6)

dismissal." *Marsh v. Butler County*, 268 F.3d 1014, 1036 n. 16 (11th Cir.2001). The motion should be granted if the complaint fails to allege the violation of a clearly established constitutional right. *Dalrymple*, 334 F.3d at 995. With the foregoing standard in mind, I will consider Defendant's Motion to Dismiss the First Amended Complaint.

## III. Legal Analysis

Defendants argue seven points in support of their Motion to Dismiss: (1) the County cannot be liable under 42 U.S.C. section 1983; (2) Officers Corbin and Newry are entitled to qualified immunity; (3) the County is entitled to sovereign immunity for Counts II, III, and IV; (4) Plaintiff fails to properly state a claim for malicious prosecution; (5) Plaintiff cannot maintain an action against the officers in their official capacity; (6) Plaintiff is not entitled to attorney's fees for Counts II through IV; and (7) Plaintiff has failed to state a claim under the First Amendment. I will address each argument in turn.

### A. *County liability under 42 U.S.C. section 1983*

Count I names the County as a defendant for alleged violations of Plaintiff's constitutional rights pursuant to 42 U.S.C. section 1983.[2] Defendants argue that this count must be dismissed for the following reasons:

1. *The County cannot be liable under a theory of respondeat superior.*

 "The Supreme Court has placed strict limitations on [local government] liability under § 1983." *Tennant v. Florida*, 111 F.Supp.2d 1326, 1331 (S.D.Fla.2000).

---

1. Plaintiff has alleged additional facts in his Response [DE 7] filed on November 30, 2007, which this court declines to address.

2. Violations of section 1983 occur when a person suffers the deprivation of rights secured by the U.S. Constitution and federal laws inflicted by one acting "under color of any state statute, ordinance, regulation, custom, or usage of any State or Territory of the District of Columbia." 42 U.S.C. § 1983.

For example, local governments may not be found liable under section 1983 merely because its agents or employees have caused a constitutional injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("[W]e conclude that a municipality cannot be held liable solely because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."); *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) ("Respondeat superior or vicarious liability will not attach under section 1983."); *Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir.2003) ("A county's liability under section 1983 may not be based on the doctrine of respondeat superior.").

Defendants argue that in his Complaint Moore attempts to impermissibly impose liability on the County based on the alleged actions of its employees. In his response, Moore ignores the weight of authority cited in Defendants' Motion to Dismiss regarding the prohibition of municipal liability based on a theory of respondeat superior.

As Defendants correctly point out, Moore is alleging liability based solely on the fact that the county employs officers Newry and Corbin, which is clearly a claim of respondeat superior liability. It is well established that the County cannot be liable under section 1983 merely because its agents or employees have caused a constitutional injury. *See Monell*, 436 U.S. at 691, 98 S.Ct. 2018; *See also Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir.2003). Insofar as Plaintiff's language in the Amended Complaint asserts that the County is "responsible" for its employees' actions, this is not enough to state a claim against the County pursuant to section 1983.

2. *Plaintiff fails to identify any County official or unofficial acts or policy.*

A county may be liable under section 1983 only if the plaintiff's injury was inflicted pursuant to an "official policy" of the county. *Monell*, 436 U.S. at 694, 98 S.Ct. 2018; *Grech*, 335 F.3d at 1329; *Cagle v. Sutherland*, 334 F.3d 980, 986 (11th Cir.2003); *Tittle v. Jefferson County Comm'n*, 10 F.3d 1535, 1540 (11th Cir.1994) ("Counties may be liable for violations of constitutional rights only when such violations occur as a result of an official county policy.").[3]

A party may establish that such a policy exists by proving either "(1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through repeated acts of a final policymaker for the county." *Grech*, 335 F.3d at 1329. "Because a county rarely will have an officially-adopted policy of permitting a particular constitutional violation," most plaintiffs must prove that their injuries were the result of an unofficial custom or practice. *Id.* at 1330. "Under either avenue, a plaintiff must (1) show that the local governmental entity, here the county, has authority and responsibility over the governmental function in issue and (2) must identify those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged to have caused the particular constitutional violation in issue." *Id.*[4]

---

3. "This 'official policy' requirement [is] intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Grech*, 335

F.3d at 1329 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479–80, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)).

4. "The final policy making authority for Miami–Dade County rests solely with the Board

In order to establish section 1983 liability against a county based on an *unofficial custom or practice*, "a plaintiff must establish a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir.1991). Accordingly, "a municipality's failure to correct the constitutionally offensive actions of its employees can rise to the level of a custom or policy (1) if the municipality tacitly authorizes these actions or (2) displays deliberate indifference towards the misconduct." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1308 (11th Cir.2001) (quoting *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987)). Further, where a plaintiff seeks to establish that a county policy worked a constitutional deprivation through a "custom or practice" in which the county was deliberately indifferent to constitutional violations, a plaintiff must show that the county had subjective knowledge of a risk of serious harm and consciously disregarded that risk. *Cagle v. Sutherland*, 334 F.3d 980, 985 (11th Cir.2003) (quoting *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir.1999)). In other words, the practice must be "so pervasive as to be the functional equivalent of a formal policy." *Grech*, 335 F.3d at 1330 n. 6. This type of widespread practice is "deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Id.* "[R]andom acts or isolated incidents are insufficient to establish a custom or policy." *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir.1986).

As Defendants correctly point out, Plaintiff has not alleged any official or unofficial custom or policy. Plaintiff merely alleges as follows:

> Miami Dade County's Chief of Police and police supervisors, were at all time material hereto, supervisors of the police officers involved in the subject incident and therefore, responsible for the training, supervision, and conduct of Defendant. (First Am. Compl. ¶ 7).

and that

> Miami–Dade County, through the actions of its Port Security Officer Newry, Miami–Dade Police Officer Anthony Corbin and his supervisors, falsely arrested and detained the Plaintiff for the charges filed against the Plaintiff without any reasonable or probable cause or good faith for the charges filed against the Plaintiff whatsoever. (First Am. Compl. ¶ 30).

Defendants argue that Plaintiff fails to allege or identify any *officially* promulgated County policy that led to Plaintiff's injury. Specifically, Defendants argue that Plaintiff fails to identify any County ordinance, resolution, or administrative order, or anything else that would otherwise establish an official County policy.

Moreover, Defendants argue that Plaintiff failed to allege that there is an *unofficial* County custom or practice that caused the alleged constitutional violation. As explained above, under this avenue, Plaintiff

of County Commissioners or the County Manager." *Wilson v. Miami-Dade*, No. 04–23250, 2005 WL 3597737 at *8–*10 (S.D.Fla. Oct. 11, 2005) (Moore, J.) (granting motion to dismiss based on failure to plead that the Board or Manager were responsible for the alleged violations and holding that only the Board or Manager, and not the Director of the Police Department, could be final policymaker for the County); *Buzzi v. Gomez*, 62 F.Supp.2d 1344, 1359–1360 (S.D.Fla.1999) (Gold, J.) (finding that the MDPD Director was not the final policymaker for the County). Determining whether an official possesses final policymaking authority is a question of law for the court to decide. *See Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989).

must allege and prove (i) an unofficial practice; ii) through repeated acts; iii) of a final policymaker of the County; iv) that is permanent and well settled; v) about which the County's final policymakers knew and failed to stop. Defendants argue that Plaintiff failed to allege *any* act or unconstitutional policy employed by a final policymaker (the Board or Manager) of the County. Further, Defendants note that the Complaint is utterly devoid of any references to a "widespread practice." Finally, Defendants argue that Plaintiff failed to allege that the County's final policy makers had any subjective knowledge of any risks or problems with any County policy, or that they demonstrated "deliberate indifference" to the risks of these problems and failed to take any action.

In response to Defendants' Motion to Dismiss, Moore argues that while he has not proven that such a custom or policy exists, that proof is necessary only to succeed at trial, and is not required to survive a 12(b)(6) motion. Moore's argument is unavailing because he has failed to even allege such a policy or custom, and while he need not prove anything at this stage in the litigation, he must make allegations sufficient to state a cause of action against the County. As correctly pointed out by Defendants, Moore fails to identify and allege an officially promulgated County policy, particularly one that permits a constitutional violation. Moreover, Plaintiff fails to identify an unofficial custom or practice of the County, shown through repeated acts of a final policymaker, that caused Plaintiff's alleged constitutional deprivation. Nowhere in the Complaint does the Plaintiff allege that the County's final policymakers knew and failed to stop an unofficial custom or practice, as required by law to maintain a section 1983 claim

against the County. Single, isolated incidents simply do not suffice under *Monell* and its progeny to impose municipal liability. Because he has not pled any facts sufficient to state a claim under section 1983, Moore's claims against the County must be dismissed.[5]

### B. Qualified Immunity as to Officers Corbin and Newry.

As noted above, when a governmental official who is sued individually asserts qualified immunity, as is the case here, Eleventh Circuit precedent imposes a heightened pleading standard for the complaint instead of Rule 8's minimal notice pleading. *Gonzalez v. Reno,* 325 F.3d 1228, 1235 (11th Cir.2003) ("In examining the factual allegations in a Complaint, we must keep in mind the heightened pleading requirements for civil rights cases ... [M]ore than mere conclusory notice pleading is required."). The complaint must allege the relevant facts "with some specificity." *Id.* (citing *GJR Investments, Inc. v. County of Escambia,* 132 F.3d 1359, 1367 (11th Cir.1998)). "[A] Complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." *Id.* (quoting *Fullman v. Graddick,* 739 F.2d 553, 556–57).

The defense of qualified immunity protects officials performing discretionary functions from liability "where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Gold v. City of Miami,* 121 F.3d 1442, 1445 (11th Cir.1997) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). To be entitled to qualified immunity, "the public official must show that he was acting within

---

5. This court finds it appropriate to dismiss Moore's claim against the County without prejudice, affording Moore the opportunity to amend his pleadings to state a cause of action against the County, if such facts exist.

the scope of his discretionary authority at the time the allegedly wrongful acts occurred." *Durruthy v. Pastor,* 351 F.3d 1080, 1087 (11th Cir.2003) (citing *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir. 2002)). In this case, it is not disputed that during the periods alleged in the Complaint, Officers Corbin and Newry were on duty on behalf of the MDPD and were acting within the course and scope of their authority as police officers. (First Am. Compl. ¶ 8).

 Once it is established that the officers were acting within their discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Durruthy,* F.3d at 1087 (quoting *Lee,* 284 F.3d at 1194). The United States Supreme Court has set forth a two part test to determine whether a plaintiff has alleged facts sufficient to defeat qualified immunity. "The threshold inquiry ... is whether [the] plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer,* 536 U.S. 730, 736, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002); *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151.

 However, "[i]f a constitutional right would have been violated under the plaintiff's version of facts, "the next, sequential step is to ask whether the right was clearly established." " *Vinyard v. Wilson,* 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151).[6] In *Saucier,* the Supreme Court stated that the relevant query is whether it "would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 201, 121 S.Ct. 2151.[7] In *Hope v. Pelzer,* 536 U.S. at 741, 122 S.Ct. 2508, the Supreme Court refined the *Saucier* query, holding that the "salient question ... is whether the state of law ... gave [the officers] fair warning that their alleged treatment [of the plaintiff] was unconstitutional".

 In the context of qualified immunity defenses, the law requires the evaluation of only the four corners of the Complaint in ruling on the Defendants' Motions to Dismiss. *See St. George v. Pinellas County,* 285 F.3d 1334, 1337 (11th Cir.2002). As Defendants correctly point out, the Complaint is utterly devoid of any facts regarding Officer Corbin's conduct. Plaintiff merely alleges that Officer Corbin arrived at the scene and ordered Plaintiff to be placed in custody and that Officer Corbin filed a criminal action against Plaintiff. (First Am. Compl. ¶¶ 21,23).

---

**6.** Put another way, first the Court must consider "in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. If, in doing this, the Court finds that no constitutional right was violated, the inquiry ends there and the Defendant is entitled to qualified immunity. If the facts disclose a constitutional violation, however, the Court then must ask whether, at the time the violation occurred, "every objectively reasonable police officer would have realized the acts violated already clearly established federal law." *Garrett v. Athens–Clarke Co.,* 378 F.3d 1274, 1278–79 (11th Cir.2004).

**7.** To determine the propriety of qualified immunity, the government official's conduct is evaluated under an "objective legal reasonableness" standard. *Koch v. Rugg,* 221 F.3d 1283, 1295 (11th Cir.2000) (citations omitted). The official's subjective intent is irrelevant to the inquiry. *Id.* Under the "objective legal reasonableness" standard, a government official performing discretionary functions is protected if "a reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred." *Hardin v. Hayes,* 957 F.2d 845, 848 (11th Cir.1992).

Additionally, in the context of the False Arrest Claim against Defendants, Plaintiff makes a bare allegation that Officer Corbin arrested Plaintiff "without probable cause and with malicious intent." (First Am. Compl. ¶ 28). The Eleventh Circuit has established that an officer receives qualified immunity from suit under section 1983 as long as he possessed "arguable probable cause" for the arrest. *See Jones v. Cannon,* 174 F.3d 1271, 1283 n. 3 (11th Cir.1999) ("Arguable probable cause, not the higher standard of actual probable cause governs the qualified immunity inquiry"). Nevertheless, I need not address the "arguable probable cause" issue because in light of the heightened pleading standard, such bare and conclusory allegations are insufficient to establish that Officer Corbin's actions resulted in a constitutional violation of a clearly established right. Accordingly, Plaintiff has not met his burden and Officer Corbin is entitled to qualified immunity.

 Moreover, Defendants argue that because Moore does not plead that Officer Newry arrested Plaintiff, he is also entitled to qualified immunity. In response, Plaintiff merely states that he is at a loss why Defendant would be raising the qualified immunity argument at the Motion to Dismiss stage. Eleventh Circuit precedent clearly dictates that qualified immunity should be resolved at the earliest possible stage of litigation because it "is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Gonzalez,* 325 F.3d at 1233 (citations omitted).

In making the decision whether Officer Newry is entitled to qualified immunity, I must continue to take into account the heightened pleading standard. As stated above, under the doctrine of qualified immunity, government officials performing discretionary functions are immune not just from liability, but from suit, unless the conduct which is the basis for the suit violates a clearly established statutory or constitutional rights of which a reasonable person would have known. Plaintiff alleges no facts in his First Amended Complaint and offers no authority in his Response to the Motion to Dismiss establishing that any reasonable officer in Officer Newry's position would have known that his or her conduct violated federal law. Further, Plaintiff does not plead that Officer Newry arrested Plaintiff; instead, he merely alleges that Defendants "cause[d] Plaintiff to be arrested and unlawfully deprived him of his liberty and his constitutional rights." (First Am. Compl. ¶ 28). Plaintiff provides a list of constitutional violations, including Fourth, Fifth, and Fourteenth Amendment violations, without elaboration and without differentiating between the various defendants. Thus, even if I were to find that a constitutional violation occurred, Moore has not met the heightened pleading requirement by failing to allege sufficient facts to establish that his purported constitutional rights were clearly established by case law or otherwise. Therefore, Moore has failed to overcome Officer Newry's qualified immunity defense, and his claims against him pursuant to section 1983 must also be dismissed.[8]

## C. *The County is entitled to sovereign immunity for Counts II, III and IV.*

 The doctrine of sovereign immunity provides that the County, as a political subdivision of the State of Florida, is immune from suit except in those circumstances where the State has given its con-

---

8. The claims against the Officers, pursuant to 42 U.S.C. § 1983, will be dismissed without prejudice, such that Moore may amend his pleadings to state a cause of action against the them, if such facts exist.

sent to be sued. *See Cauley v. City of Jacksonville*, 403 So.2d 379, 381 (Fla.1981) ("Thus the general rule was that state governments, their agencies, and their subdivisions could not be sued in state courts without state consent"). In 1973, Florida gave its consent to be sued in tort actions through the enactment of Florida Statute § 768.28. The State, however, waived its sovereign immunity from liability for torts "only to the extent specified in this [statute]," Fla. Stat. § 768.28(1) (2004), and thus set out limitations to suits against the State of Florida and its political subdivisions, such as Miami–Dade County.

One such limitation is that in any case involving the actions of a county employee, either the county or the employee can be held liable, but not both. Fla. Stat. § 768.28(2) & (9)(a); *McGhee v. Volusia County*, 679 So.2d 729, 733 (Fla.1996) ("In any given situation either the agency can be held liable under Florida law, or the employee, but not both"). Furthermore, the general rule is that the State may be held liable for the acts of its employees, unless "such [an] act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a); *See also McGhee*, 679 So.2d at 733.

Accordingly, Florida courts have routinely held that a governmental entity may not be held liable where its employee's actions were malicious, in bad faith, or showed reckless and wanton disregard for human rights, safety, or property. *See, e.g. City of Fort Lauderdale v. Todaro*, 632 So.2d 655, 656–58 (Fla. 4th DCA 1994) (reversing verdict against city where jury found employee acted with willful disregard for safety); *Willis v. Dade County Sch. Bd.*, 411 So.2d 245, 246 (Fla. 3d DCA 1982) (affirming trial court's dismissal of complaint that alleged "malicious" assault and battery).

■ Defendants argue that the County is entitled to sovereign immunity for Counts II through IV for the following reasons: (1) in Count II, Plaintiff specifically alleged that the officers' actions were "wickedly, willfully, wanton and maliciously done," (First Am. Compl. ¶ 31); (2) in Count III, Plaintiff alleges that the Defendants acted "maliciously," (First Am. Compl. ¶ 35); (3) in Count IV, Plaintiff alleges that Officer Newry used "deadly and unnecessary force," (First Am. Compl. ¶ 38). In response, without providing any analysis or legal authority, Moore argues that the County's immunity has been waived for the state law claims. Further, Moore seems to argue that the issue of whether an officer acted maliciously requires a factual analysis, and should be resolved at trial.

In *Willis*, the plaintiff sued the Dade County School Board asserting that one of the County's physical education teachers maliciously assaulted and battered the plaintiff, causing her injury. The trial court dismissed the amended complaint for failure to state a cause of action. The appellate court upheld the dismissal based on sovereign immunity grounds because the amended complaint *expressly* alleged a "malicious assault and battery." *See Willis*, 411 So.2d at 246. Thus, given Moore's express allegations of malicious, wanton, or willful conduct by the County's employees, I find that the County is not liable under § 768.28(9) of the Florida Statutes, and is therefore entitled to sovereign immunity on all state law claims.

D. *The officers are entitled to sovereign immunity.*

■ With respect to waiver of sovereign immunity in tort actions, Florida Statute § 768.28(9)(a) states in relevant part:

No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a).

Moreover, as stated above, in any case involving the actions of a county employee, either the county or the employee can be held liable, but not both. *Id.* Defendants argue that insofar as Plaintiff is alleging that Officers Newry and Corbin were acting within the scope of their employment, and not acting with malice, then all state law claims against them must be dismissed because they are protected by sovereign immunity. In response, Moore, again without any legal analysis, asserts that both Florida's Fourth District Court of Appeals and the United States Supreme Court have held that the Officers are not protected by state sovereign immunity.

To abrogate state immunity, Plaintiff must plead that the Officers "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9). Thus, Plaintiff's allegations in Counts II through IV, which state that the Officers acted maliciously and with unnecessary force are enough to defeat the Officers' entitlement to sovereign immunity. Nevertheless, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendant state-law claims." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

With the Complaint as it stands, I cannot determine whether federal jurisdiction exists in this case. Therefore, pending Plaintiff's filing of an Amended Complaint, I cannot determine whether there is a basis for supplemental jurisdiction over the state law claims set out in Counts II through IV, and thus, I decline to address them at this time.

## IV. Conclusion

As stated above, Count I of Plaintiff's First Amended Complaint, which alleged civil rights violations under 42 U.S.C. section 1983 is dismissed without prejudice, and the only causes of action remaining are state law claims of false imprisonment, malicious prosecution, and battery. Absent an independent basis for federal jurisdiction, the state law claims can only be maintained through the district court's discretion to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3). As explained, pending Plaintiff's filing of an Amended Complaint, I decline to address the state law claims at this time. Furthermore, I find it unnecessary to address the remaining arguments outlined by Defendants in their Motion to Dismiss: Plaintiff fails to properly state a claim for malicious prosecution; Plaintiff cannot maintain an action against the officers in their official capacity; Plaintiff is not entitled to attorney's fees for Counts II through IV; and Plaintiff has failed to state a claim under the first Amendment.

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Defendants' Motion to Dismiss the First Amended Complaint [DE 5] is **GRANTED.**

2. Plaintiff's Complaint is DISMISSED WITHOUT PREJUDICE.

3. Plaintiff may file an Amended Complaint within 20 days.