[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 23-10538

Non-Argument Calendar

_____

PAIGE LAINE KHYEL TAYLOR,

Plaintiff-Appellee,

*versus*

SHERIFF, PINELLAS COUNTY FL,
in his official capacity,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:20-cv-00687-CEH-MRM

_____

Before JILL PRYOR, ABUDU, and ANDERSON, Circuit Judges.

PER CURIAM:

This case arose from events that followed a traffic stop by Deputy Wagner of a vehicle in which Paige Taylor occupied the passenger seat. Tayler was arrested at the scene and charged with battery on an officer and resisting an officer during the arrest. After both charges against Taylor were dropped, Taylor brought suit, alleging a § 1983 excessive force claim against Deputy Wagner, a § 1983 false arrest claim against Wagner, and also alleging a state law false arrest claim against Wagner as well as a state law battery claim against Wagner. Taylor also alleged a state law claim that Sheriff Gualtieri ("the Sheriff") is vicariously liable for Wagner's false arrest of Taylor, as well as a state law claim that the Sheriff is vicariously liable for Wagner's battery (excessive force) against Taylor. This appeal requires discussion only of Taylor's state law claims. However, the sole issue on appeal is whether the district court erred in denying the Sheriff's motion for summary judgment based on sovereign immunity with respect to Taylor's claim for false arrest based on battery on an officer.

The district court recognized that Wagner had arrested Taylor on two grounds: his perception that she had pushed him (i.e.

battery on an officer), and for her alleged resistance while he was arresting her (i.e. resisting an officer).  After development of the summary judgment record, the district court addressed the state law claims and granted, in part, and denied in part, the Sheriff's motion for summary judgment based on Florida state law sovereign immunity.  The district court denied the Sheriff's summary judgment motion with respect to Taylor's claim for false arrest based on battery on a law enforcement officer, holding that a reasonable jury could believe Deputy Wagner's testimony that he perceived that Taylor pushed him when she grabbed the license that Wagner was returning to her, thus creating a genuine issue of fact for the jury as to whether Wagner could have reasonably perceived that Taylor had committed a battery on an officer and creating arguable probable cause to arrest her.[1]  However, the district court granted the Sheriff's motion for summary judgment as to Taylor's claim that the Sheriff was vicariously liable for Wagner's excessive force (i.e. battery) against Taylor, thus holding that the Sheriff was entitled to sovereign immunity because the videos demonstrated conclusively that Wagner had acted in bad faith in using excessive force.  Similarly, with respect to Taylor's claim that the Sheriff was vicariously liable for Wagner's false arrest based on resisting an officer, the district court granted summary judgment in favor of the

---

[1] The district court's denial of the Sheriff's motion for summary judgment with respect to Taylor's claim for false arrest based on battery on an officer constituted a denial of the Sheriff's sovereign immunity defense.  Thus, the Sheriff is entitled to immediate review of this denial, and we have appellate jurisdiction. *Butler v. Gualtieri*, 41 F.4th 1329, 1335 (11th Cir. 2022).

Sheriff because the videos demonstrated conclusively that Taylor offered no resistance to arrest. Thus, the Sheriff enjoyed sovereign immunity and was not vicariously liable for Wagner's bad faith arrest of Taylor on the basis of Taylor's non-existent resistance to arrest.

## I. DISCUSSION

### A. Florida Law of Sovereign Immunity

To understand this appeal, it is necessary to understand Florida's law with respect to vicarious liability of a state agency (like the Sheriff here) for the tortious actions of an officer or employee (like Deputy Wagner here), and to understand, on the other hand, the dimensions of the state agency's sovereign immunity. The Florida statute provides: "[T]he state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act." Fla. Stat. § 768.28(1). Subsection (9)(a) of Fla. Stat. § 768.28 sets out when an officer of the state (like Wagner here) would be immune from personal liability, and when not immune (i.e. personally liable); and when the state itself or its subdivisions (the Sheriff here) would be immune from liability for an officer's or employee's tort (like Wagner's here), and when not immune (i.e. vicariously liable):

> An officer, employee, or agent of the state or of any of its subdivisions may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act,

event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. However, such officer, employee, or agent shall be considered an adverse witness in a tort action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function. The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers is by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. The state or its subdivisions are not liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a). In other words, an officer (like Wagner here) is immune from personal liability for his torts if he is acting within the scope of his employment, unless he acted in bad faith or

with malicious purpose or with wanton and willful disregard of human rights, safety, or property; and in such circumstances, the employing agency (the Sheriff here) "alone remain[s] vicariously liable up to the limits provided by statute." *McGhee v. Volusia Cnty.*, 679 So. 2d 729, 733 (Fla. 1996). On the other hand, if an officer (like Wagner here) committed the tort while acting outside the scope of his employment or if he acted in bad faith or with malicious purpose or with wanton and willful disregard of human rights, safety, or property, then the officer (Wagner here) is personally liable, but the employing agency (the Sheriff here) enjoys sovereign immunity. *Id.* In other words, "[i]n any given situation either the agency can be held liable under Florida law, or the employee, but not both." *Id.* As relevant to this appeal, the Florida statute provides that Sheriff Gualtieri shall not be vicariously liable for the tortious acts of Deputy Wagner (i.e. shall enjoy sovereign immunity) if Wagner was acting outside the course and scope of his employment or if he committed the tort in bad faith or with malicious purpose or with wanton and willful disregard of human rights, safety, or property. There is no dispute here that Wagner was acting within the scope of his employment. Thus, the issue on appeal—stated above as being whether the district court erred in denying the Sheriff's motion for summary judgment based on sovereign immunity with respect to Taylor's claim for false arrest based on battery on an officer—resolves into the issue of whether the summary judgment evidence is such that a reasonable jury would be required, as a matter of law, to find that Wagner, in arresting Taylor on the basis of battery on an officer, acted in bad faith or with

malicious purpose or with wanton and willful disregard of human rights, safety, or property.

In addressing the issue on appeal, the Sheriff argues that the district court improperly credited Wagner's testimony that he perceived that Taylor pushed him when the videos showed that Taylor did not push or shove Wagner. He also argues that the district court erred in making inconsistent findings. Finally, he argues that the district court failed to recognize that the videos and Wagner's post-arrest statements (i.e. continuing to insist that Taylor had pushed him) demonstrated that Wagner's claim that Taylor pushed him was false, was a coverup, and was evidence of bad faith in arresting Taylor for battery on an officer. We address each argument in turn.

## B. Improper Crediting of Wagner's Testimony

Sheriff Gualtieri argues that the district court erred when it found that Taylor did not shove Wagner but nonetheless denied summary judgment on the battery on an officer part of the false arrest claim because Wagner testified that he perceived that Taylor pushed or shoved him. Gualtieri argues that Wagner's version of the facts should not be credited because he is not party to the motion for summary judgment; rather, the version put forth by Taylor that she never pushed him should be credited because she is the non-moving party, or the videos, which clearly show she did not push him, should control.

Florida courts have indicated that the determination of bad faith, with malice, or in a manner exhibiting wanton and willful disregard of the victim's rights, safety, and property involves a subjective inquiry into the officer's state of mind. *Butler v. Gualtieri*, 41 F.4th 1329, 1336-37 (11th Cir. 2022). In that case, this court (in

another case in which Sheriff Gualtieri was a party), discussed the Florida courts' interpretation of the meaning of "bad faith," "with malicious purpose," and "wanton and willful disregard of human rights [or] safety." The term "bad faith" has been equated with the actual malice standard. *Id.* at 1336. The term "malicious purpose" has been interpreted as meaning that the conduct was committed with "ill will, hatred, spite, [or] an evil intent." *Id.* The term "wanton and willful" has been interpreted as much more reprehensible and unacceptable than mere intentional conduct. *Id.* And "wanton" has been defined as acting with a conscious and intentional indifference to consequences with knowledge that damage is likely to be done, while "willful" is defined as acting intentionally, knowingly, and purposefully. *Id.* at 1336-37. Thus it is clear that the officer's subjective intent is key in determining the availability of sovereign immunity.

Here, Wagner's perception of a push or shove, and his reaction to it, are proper lines of inquiry because they inform Wagner's subjective intent. *Bulter,* 41 F.4th at 1339. Neither the videos nor Taylor's recitation of what actually happened answer the question of what Wagner thought he felt. Therefore, the district court did not err when it held that summary judgment should be denied on the sovereign immunity question on this part of the false arrest claim because a reasonable jury could believe Wagner's testimony that he perceived a push or shove.

## C. Inconsistent Factual Findings

Next, Sheriff Gualtieri argues that the district court's findings are inconsistent when it held that he was entitled to sovereign immunity with respect to Taylor's battery claim and her false arrest claim for resisting an officer with violence but not her false arrest

claim based on battery of a law enforcement officer. Where it found that sovereign immunity was appropriate, the court stated that no reasonable jury could find that Wagner did not act in bad faith, with malice, or in a manner exhibiting wanton and willful disregard of Taylor's rights, safety, and property. In other words, the district court held that the summary judgment evidence (the videos in particular) was such that a reasonable jury would be required, as a matter of law, to find that Wagner acted in bad faith, with malice, or in a manner exhibiting wanton and willful disregard of Taylor's rights or safety. In its order rejecting Gualtieri's motion for reconsideration, the court rejected Wagner's belief that Taylor resisted his efforts to handcuff her and found that no jury could believe him. However, with respect to Taylor's claim based on battery on an officer, the court stated that a reasonable jury could believe that Wagner thought Taylor had pushed or shoved him.

Regarding the different treatments accorded to Wagner's subjective, but erroneous, beliefs that Taylor pushed him and that she resisted his efforts to handcuff her, the district court explained that the videos conclusively showed that Taylor did not resist Wagner at any time during his use of force. Further, she voluntarily cooperated once she was taken to the ground. Despite the videos showing this, Wagner testified that he ordered Taylor "to the front of the vehicle multiple times as she continued to try and forcibly pull away from [his] grip" and that she "refused to comply with multiple orders to get to the ground." But the videos showed that after she took her drivers' license back from Wagner and began to walk away, Wagner grabbed her from behind with both arms and threw her forcefully into the back of the pickup truck. He then held her arms behind her back, spun her around, and threw her face first onto the parking lot pavement. With Taylor on the ground, Wagner placed his knee on her back and smashed her face

into the pavement multiple times, even after she gave her hands for him to handcuff.

By contrast, the interaction that the district court found to be one where Wagner may succeed in persuading a jury that he thought—we now know erroneously--he had been pushed or shoved was a short interaction, involving Taylor walking over to Wagner, grabbing her drivers' license, and turning quickly to walk away. While we use a subjective measure to determine whether an action was done in bad faith, with malice, or in a manner exhibiting wanton and willful disregard of the victim's rights, safety, and property, the district court could properly determine from the clear and extended view on the video that there was no chance that Wagner could persuade a jury that Taylor resisted arrest. However, given the brevity of the initial interaction, he might be able to persuade a jury that he thought he had been pushed or shoved. This is not inconsistent.[2]

### D. Entitlement to Sovereign Immunity: The Videos and Wagner's Post-Arrest Statements

Finally, Sheriff Gualtieri argues that he is entitled to sovereign immunity based on the facts in this case. In particular, he

---

[2] Although the Sheriff's reply brief argues that the district court erroneously split the false arrest claim, we conclude that that argument was not fairly raised in the Sheriff's initial brief on appeal. Although that initial brief mentioned that the district court split the false arrest claim without providing any case law precedent, there was no argument or citation of authority to support the Sheriff's implication that this was somehow error. We cannot conclude that the Sheriff fairly raised the argument in his initial brief on appeal. *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).

argues that the videos clearly show that Taylor did not push or shove Wagner. The Sheriff also points to Wagner's post-arrest statements about receiving a push that, he argues, demonstrate Wagner's bad faith or malice.

While Sheriff Gualtieri argues that Wagner's post-arrest statements that he received a push from Taylor evince an effort to conceal his false arrest, they could also be interpreted as a steadfast belief in the veracity of his statement. Indeed, his continued testimony in light of the videos could indicate that he sincerely believed he had been pushed or shoved. This is a question for the jury and thus the district court did not err. And we cannot disagree with the district court that the videos do not conclusively demonstrate that a reasonable jury might not believe Wagner's testimony that he felt something on his chest and perceived that he had been touched in a manner that he could have perceived as a battery. In other words, the brief initial interaction on the video is not clear enough to eliminate that possibility that a reasonable jury might believe Wagner's testimony and believe that Wagner—in perceiving that he had been touched in a manner that could be perceived as battery— acted in the absence of bad faith, malicious purpose or wanton and willful disregard for Taylor's rights or safety.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.